(108 So. 464)

No. 25880.

## BROWN v. CONTINENTAL CASUALTY CO.

(March 1, 1926.    Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. Insurance ⚙︎389(9) — Insurer, having opportunity but failing to inquire as to applicant's ailments, waives right to claim forfeiture for untrue or incomplete answers as to health in application, in absence of allegation of fraud (Act No. 97 of 1908).

Where insurer has ample opportunity to inquire as to applicant's ailments, and does not do so, it will be presumed to have waived right to claim forfeiture on ground that insured did not make true and full answers as to health in his application, in view of Act No. 97 of 1908, and in absence of allegation of fraud.

2. Insurance ⚙︎291(1)—Health and accident policy, taken by physician without examination, held not forfeited because of failure to specify in application that he had stomach trouble and consequent headaches and insomnia, in absence of fraud (Act No. 52 of 1906; Act No. 97 of 1908).

Where applicant for health and accident insurance was required to answer as to certain serious ailments, policy issued to physician *held* not forfeited because of his failure to report stomach trouble and consequent headaches and insomnia, which ailment was not specified in application blank except that it might be included within expression, "any chronic or periodic, physical ailment," in absence of actu-

al intent to deceive, in view of Act No. 52 of 1906, and Act No. 97 of 1908.

3. Insurance ⚙︎455 — Death from inhaling more chloroform than was intended to be administered held death by "accidental means."

Where doctor inhaled chloroform to relieve headache and insomnia, death caused by accidental inhaling of too much chloroform, *held* death by "accidental means," notwithstanding intention to inhale some chloroform.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accidental Means.]

4. Insurance ⚙︎460 — Death from inhaling chloroform held not while under influence of "intoxicant," within meaning of health and accident policy.

Death from inhaling chloroform *held* not occurring while under influence of intoxicant within meaning of health and accident policy; "intoxicant" so used meaning intoxicating liquor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Intoxicants.]

5. Insurance ⚙︎461(1) — Inhaling chloroform administered by practicing physician is not voluntary exposure to unnecessary danger within health and accident policy.

Inhaling chloroform administered or prescribed by practicing physician, even to himself, is not voluntary exposure to unnecessary danger within health and accident policy, precluding recovery in such cases.

6. Insurance ⚙︎602—In action for indemnity for death under health and accident policy, beneficiary may not recover double indemnity and attorney's fees (Act No. 310 of 1910).

In action for indemnity for death under health and accident policy, beneficiary may not recover double indemnity and attorney's fees under Act No. 310 of 1910, imposing such penalties only in cases of illness or accident.

Overton, J., dissenting.

Appeal from Eleventh Judicial District Court, Parish of Red River; James W. Jones, Jr., Judge.

Action by Mrs. Susie Lee Brown against the Continental Casualty Company. Judgment for plaintiff, and defendant appeals. Judgment amended.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Nettles & Bethard, of Coushatta, for appellee.

O'NIELL, C. J. This is a suit on an insurance policy providing for $1,000 indemnity for loss of life by accidental means. The policy was on the life of Dr. Andrew W. Brown, a physician of general practice, who died in consequence of inhaling too much chloroform, which he used to relieve headache and insomnia. The plaintiff in the suit is the widow, the beneficiary named in the policy. She sued for and was allowed double indemnity and $250 for her attorneys' fee, under sections 2 and 3 of the Act 310 of 1910, allowing such penalties for failure of the company to pay within 30 days after due notice and proof of death. The defendant has appealed from the judgment.

It is not contended that the insured committed suicide. He was accustomed to inhaling chloroform and taking chloral to relieve headache and insomnia, and was found dead in bed one morning, the evidence being that he had fallen asleep while inhaling the chloroform. It is possible, in fact not altogether improbable, that the death of the insured was the result of an overdose of chloral; but that is not contended for by either party to the suit; and it is virtually conceded that, if the insured did take an overdose of chloral, it was not done intentionally, the intention being to take the usual, harmless dose.

The headaches and insomnia which the insured suffered from were caused by a disturbance of the stomach, the ailment being in some measure chronic.

The suit is defended on four separate grounds. The first contention is that, in Dr. Brown's application for the insurance, he made a false statement with regard to a material fact when he said that he had not had and was not suffering from any chronic or periodic physical ailment or disease. The second contention is that, although the death of the insured was unexpected, unintentional and accidental, the means which caused the death was intentional and not accidental; the condition of the policy being not that the death itself should be accidental, but that it should be caused by accidental means, to make the company liable for the indemnity. The third contention is that chloroform is an intoxicant, and that the insured therefore died while under the influence of an intoxicant; whereas the policy, according to its terms, did not allow indemnity for death resulting while the insured was under the influence of any intoxicant. The fourth contention is that, by inhaling chloroform, the insured voluntarily exposed himself to unnecessary danger, in violation of an express condition of the policy.

[1, 2] Taking up appellant's first contention, we find it stipulated in the policy that it was issued in consideration of the statements made in the application therefor, and that a copy of the application was made a part of the contract. The application itself, which, as we understand, was made on a printed form prepared and furnished by the company was, as far as pertinent to this discussion, as follows:

"I hereby apply for insurance in the Continental Casualty Company (hereinafter called the company), based on the following statements: * * * Except as herein stated, I have not had nor am I now suffering from tuberculosis, paralysis, rheumatism, hernia, appendicitis, nor any chronic or periodic mental or physical ailment or disease, nor am I crippled or maimed, nor have I any defect in hearing, vision, mind or body. No exception. * * * I have made the foregoing statements as representations to induce the issuance of the policy for which I have made application, and to that end I agree that, if any one or more of them be false, all right to recover under said policy shall be forfeited to the company if such false statement was made with actual intent to deceive, or if it materially affects either the acceptance of risk or the hazard assumed by the company."

Appellant contends that the statement, in the application, that the applicant had not had and was not suffering from any chronic or periodic physical ailment or disease, was false, because he was suffering from the disturbance of the stomach and the consequent headaches and insomnia.

Act 52 of 1906 declares that every policy of insurance issued or delivered in this state by any life insurance corporation doing business in the state shall contain the entire contract between the parties; that nothing shall be incorporated therein by reference to any constitution, by-laws, rules, application, or other writing, unless the same be indorsed upon or attached to the policy when issued; that all statements purporting to be made by the insured shall, in the absence of fraud, be deemed representations and not warranties; and that any waiver of the provisions of the statute shall be void. The statute refers, specifically, to life insurance corporations, and, in its title, to life insurance policies only. It is therefore doubtful whether the statute, except so far as it expresses the general policy of the law, is applicable to an indemnity policy, like this, covering loss of life by accidental means, but not from natural causes.

Act 97 of 1908, however, is applicable to health and accident policies, such as this, as well as to life insurance policies. The statute provides:

"That whenever life, health or accident insurance companies, which issue policies or contracts of insurance to the assured without a medical examination of the assured by a physician, it shall be presumed (whenever it appears that the agent of the company has had an opportunity to ascertain the true condition of the health, habits or occupation of the assured, and has certified to the company the desirability of the risk), that the knowledge acquired, or which might have been acquired with reasonable diligence by the agent of the company in securing the application, as to the health, habits or occupation of the assured, has been disclosed to his principal; and it shall also be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation, knowledge of the agent of the company in writing the application, or of the collector of the company in collecting the premiums from the assured, shall be imputed as notice to the company, as to the health, habits or occupation of the assured."

The policy sued on in this case was issued without a medical examination. No inquiry whatever was made by the company or its agent, as to whether the applicant had ever had stomach trouble, headache or insomnia, or with regard to his health or habits, in any respect. The only ailments inquired about specifically were the serious ailments specified in the application blank; i. e. tuberculosis, paralysis, rheumatism, hernia, and appendicitis. If the ailments which the applicant in this instance had—stomach trouble and consequent headaches and insomnia— were not important enough for the company or its agent to inquire about, when the company and its agent had ample opportunity to inquire about them, then, by the terms of the act of 1908, and in the absence of any allegation of fraud, it must be presumed that the company waived its right to claim a forfeiture of the policy on the ground that the insured did not make true and full answers in his application, as to his health, in that respect.

By the terms of the application for insurance, a false statement on the part of the applicant was not enough to forfeit the right to recover under the policy, unless the false statement was made with actual intent to deceive, or materially affected either the acceptance of the risk or the hazard assumed by the company. There is no reason to believe that Dr. Brown, in omitting the statement that he suffered from a disturbance of

the stomach and consequent headaches and insomnia, intended to deceive the company. We do not believe that, if the applicant had stated that he had those ailments, the company would have thought it materially affected the risk, with regard to the accident indemnity. The superintendent of underwriting of the accident and health department of the company testified, under commission, that, if the applicant had stated in his application that he was suffering from the conditions referred to, the policy would not have been issued, because the applicant would not have been an acceptable insurance risk. But the witness explained that the reason why the company would not have issued the policy if the company had known of the ailments referred to was that the policy covered health insurance as well as accident insurance, and therefore a statement that the applicant had stomach trouble and consequent headaches and insomnia would have been material to the hazard assumed by the company; from which we infer that such a statement on the part of the applicant would not have been material to the hazard assumed in the accident provisions of the policy. It is true that the stomach trouble and consequent headaches and insomnia were the remote causes that led to the accidental death of the insured, but that was only a coincidence, and an extraordinary one at that. Aside from those considerations, we note that the superintendent of underwriting of the accident and health department of the company testified also that no investigation or inquiry whatever was made by the company or its agent as to any fact except the facts set forth in the application for the insurance. The applicant was a prominent physician in a small town, where his neighbors, no doubt, had some knowledge of the condition of his health and his habits. The defendant company had no resident agent or physician there. The application was sent to the company's agent in Washington, D. C. Without having made any investigation whatever, aside from the statements in the application itself, as to the applicant's health or habits, the company cannot successfully argue or assume that the knowledge acquired after the death of the insured could not have been acquired before the policy was issued, "with reasonable diligence by the agent of the company," as Act 97 of 1908 provides.

We have no doubt that, when Dr. Brown made application for the policy of insurance, he believed that his headaches and spells of insomnia—if he thought of them at all—were not of sufficient importance to be mentioned in the application. It is not denied that he was a reputable physician and an honorable man. Our ruling in that respect in Cunningham v. Penn Mutual Life Insurance Co., 95 So. 110, 152 La. 1023, is quite pertinent, viz.:

"Answers to questions in life insurance application, as to when applicant was last attended by a physician, and the disease for which he was attended, etc., may be knowingly untrue, and yet not fraudulent, as the applicant may, in good faith, have not considered the facts of sufficient importance to report, especially in view of the law that inconsequential illness does not have to be disclosed, though occasioning the attendance of a physician."

Our conclusion is that the right to recover under the policy was not forfeited by the failure of the applicant for insurance to disclose in his application that he suffered from a disorder of the stomach and the consequent headaches and insomnia.

[3] Appellant's second defense, that, under a policy providing indemnity for loss of life "by accidental means," the company is not liable for an accidental death, unless the means which caused the death was unintentional, seems to be sustained by very high authority in other states. In a note in L. R. A. 1916B, 1021, the author says that, in determining whether an injury occurred "by accidental means," the means must govern the result and not the result the means, and that, however unexpected the result may have been, no recovery should be allowed un-

der such a provision in an accident policy unless there was something unexpected in the cause or means which produced the result. The author cites Lehman v. Great Western Accident Association, 133 N. W. 752, 155 Iowa, 737, 42 L. R. A. (N. S.) 562, as maintaining that it is not sufficient that there was an accidental, unusual and unanticipated result, that the means must be accidental; that is, involuntary and unintended. In Rock v. Insurance Co., 156 P. 1029, 172 Cal. 462, L. R. A. 1916E, 1196, the Supreme Court of California observed that the policy, as in this case, did not insure against accidental death or injury, but against death or injury effected by accidental means; and the court ruled that it was not enough that the death or injury was unexpected or unforeseen, but that there must have been some element of unexpectedness in the preceding act or occurrence which led to the death or injury.

We do not believe that the doctrine stated, making a distinction between "accidental death or injury" and "death or injury by accidental means," means that, under a policy of insurance against death or injury by accidental means, the insurance company is not liable for an accidental death or injury resulting from a voluntary act in which the insured did not intend or anticipate a fatal or injurious result. The ruling in the California case cited is well qualified by the statement "that there must have been some element of unexpectedness in the preceding act or occurrence which led to the death or injury," to make the insurer liable. In the case before us, there was this element of unexpectedness, that the insured inhaled more chloroform than he expected to inhale. The means or cause of his death was not that he intentionally inhaled chloroform, which he had done many times before, but that he unintentionally inhaled too much chloroform. If a man intentionally takes a dose of medicine, but unintentionally takes poisonous medicine, and thereby kills himself, would the verdict of the coroner's jury be that the cause of death was that the man intentionally swallowed medicine, or would it be that the cause of death was that the man unintentionally swallowed poison? In Dezell v. Fidelity Co., 75 S. W. 1102, 176 Mo. 253, it was held that death caused by an excessive dose of medicine prescribed by a physician was a death from external, violent and *accidental means;* and in Healey v. Northwest Mutual Accident Association, 25 N. E. 52, 133 Ill. 556, 9 L. R. A. 371, 23 Am. St. Rep. 637, it was held that death resulting from the taking of poison by mistake was a death from external, violent and *accidental means.* If we should hold that the death in this instance, which was caused by the accidental inhaling of too much chloroform, was not a death by accidental means, merely because the inhaling of some of the chloroform was not accidental, we would find it difficult to imagine a case of death by accidental means. Almost every accidental death or injury is the result of some voluntary act of the person killed or injured, without intending or expecting death or injury. We agree with the district court that this second defense to the suit is not well founded.

[4] Appellant's third contention, that chloroform is an intoxicant, and that the insured therefore died while under the influence of an intoxicant, is rather far-fetched. No such idea would have come to the mind of any one reading the policy, before the accident happened. This clause in an insurance policy, saying that it does not cover death resulting while under the influence of an intoxicant, has only a commonplace meaning. It means under the influence of intoxicating liquor. A physician who testified for the plaintiff in this case was asked, on cross-examination by the defendant's counsel, whether chloroform was known as an intoxicant, and the physician replied that it was a hypnotic, not an intoxicant. To us it would seem

as. appropriate to call whisky an anæsthetic as to call chloroform an intoxicant.

[5] The fourth defense rests upon the clause in the policy saying that it did not cover loss resulting from injury sustained by the insured by reason of voluntary exposure to unnecessary danger. The insured in this instance was a competent physician, and his judgment was that the use of chloroform to relieve his suffering was not an unnecessary danger. The case is the same as if some other competent physician had prescribed or advised him to use chloroform. To inhale chloroform, administered or prescribed by a practicing physician, is not a "voluntary exposure to unnecessary danger," in the meaning of such a clause in an insurance policy.

[6] We affirm the ruling of the district court that the plaintiff is entitled to recover; but she is not entitled to double indemnity or an attorney's fee for prosecuting the suit. Act 310 of 1910, imposing such penalties, applies only to "policies or contracts of insurance, *indemnifying the assured in cases of illness or accident.*" It applies only to cases "*of disability of the assured,*" and provides only that the company "shall pay *to the assured,* as a penalty," double indemnity and attorney's fees. (The italics are ours.) Besides those penalties, the statute makes it a misdemeanor, subject to fine not less than $150 nor more than $500, for an insurance company to delay payment longer than 30 days after due notice "of the disability of the assured." It has been decided that this statute, being a penal law, must be construed strictly within its terms, and is not applicable to a case where a beneficiary named in the policy sues for indemnity for the death of the insured. Canal-Commercial Trust & Savings Bank, Tutor, v. Employers' Liability Assurance Corporation, 99 So. 542, 155 La. 720.

Our conclusion is that the plaintiff is entitled only to the principal sum, $1,000, with legal interest commencing 30 days after she filed the proof of loss, which was filed on the 23d day of February, 1921.

The judgment is amended by reducing the amount thereof to $1,000, with interest at 5 per cent. per annum from the 25th of March, 1921, until paid. The defendant is to pay the costs incurred in the district court, and the plaintiff the costs of appeal.

---

OVERTON, J. (dissenting). The policy did not insure the deceased against accidental death, but against death only by accidental means. In this instance the means by which death was caused was not accidental. Such being the case, I dissent from the opinion of the majority. New Amsterdam Casualty Co. v. Johnson, Adm'r, 110 N. E. 475, 91 Ohio St. 155, L. R. A. 1916B, 1018, and reasons stated and authorities cited in footnote to last reference, that is in footnote to L. R. A.