as he admitted when he signed the dation en paiement.

The trial judge refused to allow Cooney's claim, in the alternative, for $1,424.24 for taxes, repairs, and water bills. As no complaint is urged against the ruling, it is not necessary for us to consider it.

The testamentary executor of Mrs. Cooney claims $95.00, representing rent of J. B. Harvey and dividends of the Conservative Homestead Association and Oak Homestead Association, which he claims that Cooney collected and used after the death of his wife. Our examination of the record has failed to disclose any proof to sustain the claim that Cooney collected the dividend checks issued by the homestead associations. The claim that he collected the Harvey rent, $35, appears to be correct, and his succession should be held liable therefor.

The testamentary executor of Mrs. Cooney also claims $175 for rent of the apartment in which the Cooneys lived prior to the death of Mrs. Cooney. The rent claimed is for Mr. Cooney's occupancy of the premises for five months after the death of his wife. We do not think this claim should be allowed. The evidence shows that on the death of his wife no rent was demanded of Mr. Cooney, and it was apparently understood he would be permitted to remain in the premises rent free until things were adjusted. It was only when an antagonism developed between Cooney and the children of Mrs. Cooney that Mrs. Cooney's executor demanded any rent from Mr. Cooney, at which time he removed from the premises.

For the reasons assigned, it is ordered that the judgment herein appealed from rendered

in the succession of Mrs. Mary Babst Cooney, dismissing the suit filed by Peter A. Cooney, be affirmed. It is further ordered that the judgment herein appealed from rendered in favor of Nicholas Lamantia, testamentary executor, against Percy S. Cooney, testamentary executor, be amended by increasing the principal amount of the judgment from $6,870.37 to $6,905.37. It is further ordered that the credit of $6,000 allowed defendant be set aside and stricken from the judgment; costs of suit to be paid by the defendant.

158 So. 575

### EAGAN v. METROPOLITAN LIFE INS. CO.

### In re EAGAN.

### No. 32978.

Nov. 26, 1934.

Rehearing Denied Jan. 7, 1935.

Raymond Gauche and John T. Charbonnet, both of New Orleans, for applicant.

Spencer, Gidiere, Phelps & Dunbar and W. B. Spencer, Jr., all of New Orleans, for defendant.

### LAND, Justice.

Mrs. Lena Romano Eagan, as the administratrix of the estate of Frank Romano, filed suit in the First city court of the city of New Orleans, to recover on a policy of insurance in the sum of $138 issued to the deceased by defendant company.

The defendant's agent solicited the insured to take out the policy, and application was made on January 2, 1933. At that time

the agent of defendant asked the insured the usual questions relative to his health, as contained in the application, and he represented that he was in good health, and was not suffering from any of the diseases enumerated thereon, and, in particular, was not suffering from cancer.

The defendant, without requiring a medical examination of the insured, issued the policy on January 16, 1933.

The premium was paid January 10, 1933, and the insured appeared to be in sound health. However, on January 11, 1933, he entered the Charity Hospital, and an examination revealed that he was suffering from a disease, which was diagnosed as cancer of the bladder, and which caused the death of the insured on January 29, 1933.

Judgment was rendered in the First city court of the city of New Orleans for the amount sued for by plaintiff, but was reversed, and plaintiff's suit dismissed on appeal to the Court of Appeal for the parish of Orleans (155 So. 69). The case is now before us on a writ of review herein granted.

The contention of plaintiff and appellant is that, under the provisions of Act No. 97 of 1908, failure of the insurance company to exact a medical examination of the insured, before the issuance of the policy, raised the presumption of waiver of all questions of the state of health of the insured, and precluded the defendant and appellee from interposing any defense on that ground.

Defendant company, on the other hand, contends that the policy sued on was *"null and void ab initio,"* and predicates its defense upon the following provisions of the policy:

"If (1) the insured is not alive *or is not in sound health on the date hereof*: or if (2) before the date hereof, the insured has been rejected for insurance by this or by any other company, order or association, *or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis, or cancer, or disease of the heart, liver or kidneys,* unless such rejection, medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the Secretary; * * * then, in any such case, the Company may declare this Policy void and the liability of the Company * * * in the case of any claim under this Policy, shall be limited to the return of premiums paid on the Policy, except in case of fraud, in which case all premiums will be forfeited to the Company." (Italics ours.)

Act No. 97 of 1908 is entitled "An Act Providing that life, health and accident insurance companies, which issue policies or contracts of insurance to the assured *without a medical examination by a physician,* shall waive their right to claim forfeiture for misrepresentation, etc.; under certain conditions.

"Section 1. Be it enacted by the General Assembly of the State of, Louisiana, That whenever life, health or accident insurance companies, which issue policies or contracts of insurance to the assured *without a medical examination of the assured by a physician,* it shall be presumed (whenever it appears that the agent of the company has had an opportunity to ascertain the true condition of the health, habits or occupation of the assured, and has certified to the company the desirability of the risk), *that the knowledge acquired, or which might have been acquired with reasonable diligence by the agent of the company in securing the application,* as to the health, habits or occupation of the assured, *has been disclosed to his principal; and it shall also be presumed that the company has waived its rights to claim a forfeiture of the policy* based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation whenever it shall appear *that the agent of the company knew, or might have ascertained with reasonable diligence,* the true condition of the applicant's health, or the real facts as to his habits or occupation, *knowledge of the agent of the company* in writing the application, *or of the collector of the company* in collecting the premiums from the assured, shall be imputed as notice to the company, as to the health, habits or occupation of the assured." (Italics ours.)

If the provisions of the policy upon which defendant predicates its defense are to prevail, it would be immaterial whether the agent of the company or the collector of the premiums of the company had any knowledge as to the health, habits, or occupation of the insured, when the policy issued, as the only instance in which the insured could possibly recover would be the case in which the previous disease is specifically recited "in a waiver signed by the Secretary."

In such a case, a waiver of the company's right to forfeit the policy could not be presumed, although based upon the imputation

to it of the knowledge of its agent or collector as to the health, habits, or occupation of the insured.

But defendant company contends that Act No. 97 of 1908 is not applicable to the present case, in which the policy issued without a medical examination, because it appears from the facts of the case that the agent who solicited the insurance did not have a reasonable opportunity to ascertain the true condition of the deceased's health, and could not have discovered the disease by the exercise of reasonable diligence, since only a medical examination could have revealed its existence.

The knowledge of the soliciting agent of an insurance company is imputable to the principal under Act No. 97 of 1908, whether acquired by him, or "which might have been acquired with reasonable diligence."

And if the soliciting agent had an opportunity to ascertain the true condition of health of the insured by a medical examination and failed to do so, the company cannot forfeit the policy on the ground of fraud or of misrepresentation in the application for insurance. And this rule applies to *latent* diseases, as was expressly held by this court in Massachusetts Protective Ass'n v. Ferguson, 168 La. 271, 121 So. 863.

In that case the assured was suffering from pulmonary tuberculosis, and was not aware of the disease at the time of his answers to questions as to his health in the application, and stated that he had had influenza. The true condition of the insured was not ascertained until after a medical examination after his admittance in a hospital.

The insured in the case at bar was suffering from a *latent* disease, cancer of the bladder, a disease of which he and his family and friends were wholly ignorant, until his admittance in a hospital, and a medical examination was had.

In this case, the insured had also answered in the application for insurance that he did not have cancer.

The following facts show that the soliciting agent of defendant company had ample opportunity to have had a medical examination made, before the policy issued, but failed to do so.

The insured lives in the city of New Orleans where hundreds of physicians are available at any time for medical examination.

The insured already had two policies in defendant company when, on January 2, 1933, at the solicitation of the agent of the company, he took out the additional policy sued on in this case, without medical examination.

This policy was not handed by the agent personally to Frank Romano, who was not at home, but was left there on January 16, 1933, without any investigation whatever by the agent as to the state of the insured's health at the time.

About four years prior to his death, Frank Romano, who lived with his sister, worked daily for the city of New Orleans as a blacksmith's helper. He had never taken medicine, nor had he been attended by physicians prior to his admittance in the hospital. The deceased's family knew nothing of his illness until he went to the hospital.

The agent of defendant company, who frequently saw Frank Romano prior to the execution of the policy, saw nothing unusual in his appearance, it is true; but it follows, nevertheless, that he had ample opportunity to have ascertained the true state of the insured's health by medical examination, before issuing the policy in this case, but failed to do so.

The case at bar falls, therefore, within the holding made in Massachusetts Protective Association v. Ferguson, and defendant is liable on the policy.

It is therefore ordered that the judgment of the Court of Appeal for the parish of Orleans be annulled and set aside, and that the judgment of the First city court for the city of New Orleans be reinstated and made the final judgment in this case.

It is further ordered that defendant company, Metropolitan Life Insurance Company, pay the costs of this proceeding.

HIGGINS, J., recused.