## POULLET v. LIFE & CASUALTY INS. CO. OF TENNESSEE.

### No. 16208.

Court of Appeal of Louisiana. Orleans.

May 4, 1936.

Cabral, Lenfant & Villere, of New Orleans, for appellant.

Puneky & Barrios, of New Orleans, for appellee.

JANVIER, Judge.

Mrs. Esther Poullet Le Blanc alleges that she was named beneficiary in a policy of life insurance in the sum of $250 issued by Life & Casualty Insurance Company of Tennessee on the life of her husband, Joseph T. Le Blanc, Jr. She avers that her said husband has died and that proof of his death has been filed with said company and that she has been paid by the said company the sum of $50.

She states in her petition that when the said $50 was paid to her, she signed a receipt in which it was stated that she had been paid the sum of $60 and that the said sum represented full settlement of any claim which she may have had under the said policy. She charges that she executed the said receipt in error induced by fraud and misrepresentation on the part of the adjuster for the said insurance company, who advised her that, for various reasons, which we shall hereafter discuss, she had no claim whatever against defendant company except for the return of such premiums as had been paid.

Her suit has as its first object the annulment of the said compromise agreement, and, as its second, a judgment against the insurer in the sum of $200, with interest; the said $200 representing the difference between the face of the policy and the amount which she admits she has already received.

Defendant admits that the policy was issued, but contends that the compromise agreement referred to by plaintiff is effective and binding and that, as a result thereof, no judgment may be rendered against it for any additional sum. It maintains that the amount paid in compromise was $60, as set forth in the receipt, and not $50, as alleged by plaintiff.

In justification of the compromise defendant contends that, had suit been filed on the policy, it could have shown that at the time at which the policy was issued the insured, Le Blanc, was not in good

health but was afflicted with certain diseases from which he later died, and that the existence of these diseases could not have been discovered by it, defendant, by the exercise of reasonable diligence, and that, therefore, even though no medical examination was made at the time of the issuance of the policy, the jurisprudence of this state permitted a defendant insurer, in such case, to show the previous condition of the health of the insured.

Defendant concedes that at the present time an insurer may not avail itself of the defense referred to, but it maintains that the decision of the Supreme Court of this state in Eagan v. Metropolitan Life Insurance Company, 181 La. 16, 158 So. 575, which holds that such a defense may not be availed of, had not then been rendered, and it declares that, at that time, the decision of this court in the Eagan Case, reported in 155 So. at page 69, was the final word on the subject and that, under our decision, such a defense could have been relied upon.

Assuming that the officials of defendant insurer, when they determined to attempt to negotiate with plaintiff for the compromise of her rights under the policy, were in good faith in their belief that the defense upon which they intended to rely was one which they had the legal right to present and that they also actually felt that there was evidence which would substantiate that defense, nevertheless, in view of the relationship between insurer and beneficiary, we cannot but feel that they should have advised plaintiff more fully as to the then existing status of the litigation involving the right to present that defense.

Though the Eagan Case had been decided by us on May 21, 1934, a writ of certiorari had been granted by the Supreme Court on July 3, 1934, so that, when the compromise was entered into on October 17, 1934, the officials of defendant insurer well knew that our decision was no longer the final word on the subject and that the question would not be ultimately decided in this state until the Supreme Court should pass upon the matter, which was then pending on its docket as a result of the granting of the said writ.

In spite, then, of the fact that defendant insurer knew that this writ of certiorari had been granted, its agent, as is evidenced by his testimony and by plaintiff's, advised her that there was in defendant the absolute right to set up the defense referred to. Of course, the question at that time had not been definitely settled adversely to the contentions which defendant intended to present and, had plaintiff been a person fully familiar with the status of that litigation, or had she been acting under advice of attorneys, we would find it difficult indeed to set aside a compromise made under those circumstances. But we cannot but feel that the relationship which exists, or should exist, between life insurance companies and persons dealing with them under and by virtue of policies issued by them, requires such companies to fully disclose all facts known to them touching upon liability under their policies. We feel that this is particularly true in the case of industrial companies dealing with persons who, ordinarily, have not the means to employ attorneys to advise them before making settlements of this kind. We well realize that compromise agreements made between persons sui juris and with knowledge of all the facts are looked upon with favor by the courts. But we are equally certain that compromise agreements made under circumstances such as are disclosed by this record are not looked upon with favor and should be set aside.

The record discloses that, apparently, there was no deliberate attempt to mislead or to misstate facts, but we are convinced that there was an evasion of fact and that plaintiff was permitted to believe that her rights under the policy, if any existed, were small indeed. In view of the fact that, at that time, the very contention on which defendant intended to rely was pending in the Supreme Court, we feel that information as to the exact status of that matter should have been given to plaintiff.

A compromise agreement entered into under those circumstances should be annulled.

We next consider, then, the question of whether plaintiff should be permitted to show that she received only $50, although the receipt given by her shows that she received $60. We conclude that she cannot be permitted to show this. She was capable of reading and writing; the money was given her in cash but she did not sign the receipt until some time later, after she had had ample time to count it; she was not rushed into executing the receipt; and, having signed it under the circumstances which she testified to, we do not believe

that her testimony that she received only $50 should prevail. We, therefore, hold that she received $60 at the time and that she is, therefore, entitled to a judgment for the face of the policy, $250, subject to a credit for the $60 already paid.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by reducing the amount thereof to $190, with interest at 6 per cent. from October 8, 1934, until paid, and that, as thus amended, it be affirmed, at the cost of defendant-appellant.

Amended and affirmed.