## SUCCESSION OF DEKAN v. LIFE INS. CO. OF VIRGINIA.

### No. 16515.

Court of Appeal of Louisiana. Orleans.

Jan. 25, 1937.

Eugene J. McGivney and Solomon S. Goldman, both of New Orleans, for appellant.

James N. Brittingham, Jr., of New Orleans, for Albert W. Newlin, Public Administrator.

WESTERFIELD, Judge.

Ernest Dekan died in the city of New Orleans April 26, 1935. Albert W. Newlin, public administrator, qualified as the administrator of Dekan's succession and in that capacity brought this suit against the Life Insurance Company of Virginia claiming $235 as the proceeds of an industrial life insurance policy which had been issued to Dekan by the defendant company, without medical examination, on December 18, 1934. To this suit the defendant company answered, denying liability upon the ground that a fraud had been committed on the company by Dekan who, it is averred, misrepresented the condition of his health in his written application for the insurance. The premiums which had been paid on the policy amounting to $4.25 were tendered to and refused by plaintiff.

There was judgment below in plaintiff's favor as prayed for, and defendant has appealed.

The record indicates that Dekan was an habitual drunkard and drug addict. He had been an inmate of the City Hospital for mental diseases, having been confined to that institution as a heroin addict on June 6, 1934, and having been released on June 30, 1934.

Abe Creidman, defendant's agent, who had known Dekan for some time, having sold him another policy in the defendant company on a previous occasion and having for two years collected premiums thereon, persistently solicited Dekan for the purpose of selling him the present policy and, on December 18, 1934, was finally successful. Creidman knew Dekan's habits and knew of his confinement to the City Hospital and obtained Dekan's signature to the application when Dekan was staggering drunk. All the answers to the questions in the application were filled in by Creidman, either before or after Dekan signed it. Creidman claims that he propounded the interrogatories to Dekan and wrote the answers as Dekan gave them to him. There is evidence to the contrary and Creidman himself stated "that he (Dekan) just signed the signature and I had to fill out the rest of it." The following questions, each of which is conceded to have been falsely answered in the negative in the application, constitute the basis of the defense of fraud:

"Has life proposed been attended by a physician during the past twelve months?

"Has applicant ever used opium, cocaine, or other alcoholic stimulants to the point of intoxication or ever had delirium tremens?

"Has said life ever been under treatment in any dispensary, hospital, or asylum, or been an inmate of any alms house or other institution?

It is contended that the evidence to the effect that defendant's agent had filled in the application was inadmissible and that the objection to its introduction should have been sustained by the trial court. Our attention is called to the following language in the application: "I hereby apply for insurance for the amount and on the life named herein; and I declare that the answers to the above questions * * * are complete, strictly correct and true; that the several questions were duly asked and that the answers given by me are truly recorded hereon. * * *"

The case of New York Life Insurance Company v. Stewart, 69 F.(2d) 957, a Louisiana case decided by the United States Circuit Court of Appeal for the Fifth Circuit, and the case of Provident Mutual Life Insurance Company v. Parsons (C.C.A.) 70 F.(2d) 863, are cited in support of this contention. These cases sustain the general proposition advanced, but are without application here because the policies under consideration there were not industrial life insurance policies with which certain statutes of Louisiana, to which we shall hereafter refer, are concerned.

The case of Shuff v. Life & Casualty Insurance Company, 164 La. 741, 742, 114 So. 637, wherein it was held that limitations upon the authority of insurance agents in dealing with prospective policyholders were reasonable and valid and not against public policy, is said to be a decision of our Supreme Court directly in point because it involves "an industrial life insurance policy—just as does the present case." In the Shuff Case, decided in 1927, the policy under consideration was for the principal sum of $1,000.00 and styled "an industrial limited payment life policy." According to the definition of an industrial life insurance policy, as contained in Act No. 65 of 1906, one of the characteristics of an industrial life insurance policy is that it is limited to $500. Moreover, the opinion contains the following significant statement: "If the policy in this case had been issued without a medical examination, the Act No. 97 of 1908 would be very favorable to the plaintiff; for the statute declares that in such cases, if the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, such knowledge of the agent who wrote the application, or of the collector of the premiums from the insured, shall be imputed as notice to the company, as to the health, habits, or occupation of the insured. See Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464 [45 A.L.R. 1521]. But the act of 1908 is not applicable to this case, because, by its title as well as its text, it applies only to companies issuing policies of insurance without a medical examination; and the policy sued on was issued after a medical examination of the applicant."

Act No. 97 of 1908 provides, as was stated in the foregoing excerpt from the opinion in the Shuff Case, that where a policy is written without medical examination, knowledge of the agent or of the collector of the premiums shall be imputed to the company, and that "it shall * * * be presumed that the company has waived its rights to claim a forfeiture of the policy based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation, whenever it shall appear that the agent of the company knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health." See Eagan v. Metropolitan Life Insurance Company, 181 La. 16, 158 So. 575.

Act No. 52 of 1906, as amended by Act No. 227 of 1916, provided that every policy of life insurance issued in this state shall contain the entire contract between the parties and that no statement or statements not indorsed upon or attached to the policy when issued "shall be used in defense of a claim under the policy unless contained in the written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued. Any waiver of the provisions of this section shall be void."

Act No. 134 of 1934 amended Act No. 97 of 1908 by adding an additional section reading as follows: "Nothing in this Act shall be construed to require an insurance company to cause a medical examination of an applicant to be made before issuing a policy."

Act No. 160 of 1934 provided that an application for an industrial life insurance

policy should form part of the contract of insurance whether attached to the policy or indorsed thereon when issued, provided it be in writing and signed by the applicant and, to that extent amended Act No. 52 of 1906. It also provides that: "No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove provided." Section 3.

It is contended by counsel for defendant that the effect of the later acts, Nos. 134 and 160 of 1934, is, in all cases where written applications have been obtained, to void a policy whenever misrepresentation and fraud on the part of an assured who misstates facts in his application for insurance concerning his health at the time of his application, is established. To a certain extent this is true. "Wilful" misrepresentation of the health of an applicant at the time of his application will void the policy, Fox v. Life Insurance Company of Virginia (La. App.) 170 So. 55; but where there has been no concealment, willful or otherwise, and the company has knowledge of the true condition of the health of the applicant, whatever may be the statement in the application, there has been no willful misrepresentation because there could not be. Act No. 160 of 1934 has not repealed Act No. 97 of 1908. That act declares that knowledge of the agent of the insurer or of its collector of premiums shall be imputed to it and that the subsequent issuance of a policy shall constitute a waiver of the right to claim a forfeiture of the policy on the ground that the answers in the application concerning the health of the insured are false. In the case at bar, there can be no question of the agent's knowledge that the answers which he wrote to the questions in the application to the effect that the applicant had not been attended by a physician in twelve months and had not used alcoholic stimulants to excess or opium or cocaine and had not been in a hospital were all false. He had known Dekan for several years, had collected premiums from him on another policy covering a period of two years. He called at his home, which was located over a saloon, and sold him a policy when he was under the influence of liquor. Under such circumstances the defendant waived the right to defend upon the ground that the answers were false, because it knew that they were false before it issued the policy. It is only where the insurer has no knowledge of the falsity of the answers in the application and is deceived, willfully deceived by the applicant, that the defense of misrepresentation can be availed of, and, only then if the application be in writing. The former additional requirement that the application be attached to, or written in the policy, is no longer necessary because of the amendment of Act No. 52 of 1906 by Act No. 160 of 1934.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.