**BORDELON v. NATIONAL LIFE & ACCIDENT INS. CO., Inc.***

**No. 17052.**

Court of Appeal of Louisiana. Orleans.
March 13, 1939.

Porteous, Johnson & Humphrey and F. Carter Johnson, Jr., all of New Orleans, for appellant.

Henry C. Vosbein, of New Orleans, for appellee.

WESTERFIELD, Judge.

The plaintiff, Kirby Bordelon, brings this suit against the defendant, National Life & Accident Insurance Company, Inc., of Nashville, Tennessee, claiming $500 as the beneficiary of a policy of industrial life insurance issued to Lucille M. Bordelon on June 28th, 1937. He alleges that the insured died on the 25th day of November, 1937, while the policy was in full force and effect, and that on November 29th, 1937, due proof of death was furnished by him to the defendant, but that payment was refused upon the ground that the written application for the insurance contained misstatements of fact concerning the insured's health.

The defendant company answered admitting the issuance of the policy, but denied liability upon the ground that the deceased died of acute pulmonary tuberculosis, with which disease she had been afflicted since December 18, 1931, and that she had knowledge of the fact and withheld such information from the defendant by giving false answers to pertinent questions in the application for insurance and "that the answers made by her to the questions propounded in the aforesaid application constituted a wilful misrepresentation on the part of said Lucille Marie Bordelon, and that she concealed from your respondent facts as to her ill health existing at the time that she made said application, and prior thereto, all of which constituted an attempt to perpetrate a fraud on your respondent."

The judgment below was in favor of the plaintiff as prayed for, the learned judge, a quo, giving the following brief written reasons: "Considering the provisions of Act 144 of 1936, Act No. 195 of 1932; Act No. 97 of 1908; Act No. 134 and Act No. 160 of 1934, and the suit of Sharper v. Security Mutual Benevolent Association, 177 So. 461, this Court has no other alternative but to find for plaintiff."

From this judgment defendant has appealed.

It is admitted that the insured, Mrs. Bordelon, died as a result of acute pulmonary tuberculosis and that she was afflicted with that disease at the time that the application for the policy was executed. It is also admitted that there was no medical examination and that the answers in the application were false. The position of the plaintiff is that the defendant's agent who sold the policy to the deceased and who admittedly wrote all the answers to questions in the application, knew of Mrs. Bordelon's condition and that he, the agent, and not the insured, falsified the answers, though the insured signed the

application, and that the knowledge of the defendant's agent must be imputed to his principal.

Defendant denies that its agent had obtained, or could, with reasonable diligence, obtain any knowledge of the insured's condition of health. The insurance was written for the defendant by its agent, D. S. Coco. Coco denied any knowledge of Mrs. Bordelon's infirmity. His testimony, however, is unsatisfactory in that he first stated that he obtained Mrs. Bordelon's name as a prospect through a Mrs. Savoy, who was living in the house with her, and afterwards admitted that he had known the Bordelons for a number of years and prior to their coming to New Orleans when both he and the Bordelons resided in Mansura, Louisiana.

■ Kirby Bordelon, the plaintiff, Otis Bordelon, plaintiff's brother, and Mrs. H. J. Bolotte each testified to having discussed Mrs. Bordelon's illness with Coco before the application for the policy was executed by Mrs. Bordelon. The trial judge was convinced that Coco knew of Mrs. Bordelon's condition and so are we.

Coco, for some reason or other, perhaps because of the commission he could earn, wrote a policy on Mrs. Bordelon's life notwithstanding the information he had to the effect that she was suffering from tuberculosis. If his knowledge can be imputed to his employer, the plaintiff should recover because having issued the policy with knowledge of deceased's condition, it will be deemed to have waived the provisions of its policy with respect to false answers in the application with respect to the applicant's health.

■ The general law on the subject of the imputation of knowledge of insurance agents to their principals is thus stated by Corpus Juris, Volume 37, Sec. 262(b), pp. 529, 530: "Knowledge of Officers or Agents.—Under the general rule that the knowledge of an officer or agent of insurer which is acquired within the scope of his duties as to facts material to the insurance is imputed to insurer, a policy of life insurance cannot, in the absence of a stipulation in the policy to the contrary, be avoided for misrepresentations or breach of warranty or condition as to health, habits, occupation, or other matters material to the risk, knowledge of which was acquired by authorized officers or agents of insurer in the performance of their duties relative to the acceptance of the risk and issuance of the policy, unless insured conspired with the agent to defraud insurer, or, as held by some authorities, obtained a policy by material representations known by him to be false."

■ The policy sued on contains no stipulation common to many policies to the effect that a waiver could only be effective when in writing and when attached to the policy. But if it did, it would appear that, under the jurisprudence of this state, such provision would have no effect. Gitz Sash Factory v. Union Insurance Society, 160 La. 381, 107 So. 232.

■ Act No. 97 of 1908 provides that, when a policy of insurance is written without a medical examination, knowledge of the agent, concerning the health, habits, or occupation of the insured shall be imputed to the insurer. Act No. 160 of 1934 declares that: "No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove provided." Section 3.

Act No. 144 of 1936 ordains that: "* * * whenever industrial life, health or accident insurance corporations, issue policies or contracts of insurance to the assured without a written application or a medical examination of the assured by a physician, it shall be presumed (whenever it appears that the agent of the corporation has had an opportunity to ascertain the true condition of the health, habits or occupation of the assured, and has certified to the corporation the desirability of the risk), that the knowledge acquired, or which might have been acquired with reasonable diligence by the agent of the corporation in securing the application, as to the health, habits or occupation of the insured, has been disclosed to his principal; and it shall also be presumed that the corporation has waived its rights to claim a forfeiture of the policy, based upon the ground that the assured did not make true and full answers in the application as to health, habits or occupation, whenever it shall appear that

the agent of the corporation knew, or might have ascertained with reasonable diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation, knowledge of the agent of the corporation in writing the application or of the collector of the corporation in collecting the premiums from the assured, to be imputed as notice to the corporation concerning the health, habits or occupation of the assured; provided that the provisions of the Act shall not apply in the cases of reinstatement of policies that have been permitted to lapse, or to policies which have been issued upon a written application or medical examination of the insured."

It will be noted that the word "or" is used, and it is the contention of defendant-appellant that, in order for this act to have application, it is necessary that there should have been no written application and no medical examination, whereas plaintiff-appellee maintains that the act applies to all policies issued without written application and to all such policies written without a medical examination.

Webster's New International Dictionary (2d.Ed. 1936), defines "or" as "a coordinating particle that marks an alternative; as, you may read or may write,— that is, you may do one of the things at your pleasure, but not both."

It will be noted that Act No. 97 of 1908 contained practically the same language with regard to waiver and imputation of knowledge of the agent to its principal as the Act of 1936. The former act was made to apply to life insurance policies issued "without medical examination". It thus appears that, long before the enactment of the 1936 statute, the legislature had covered the field, but had limited the application of the statute to policies issued without medical examination.

The apparent purpose of the 1936 act, was to extend the application of the 1908 statute to policies issued without written applications. It would seem, therefore, that the construction contended for by counsel for plaintiff-appellee is correct. But, if we take opposing counsel at his word and assume, as he would have us hold, that Act No. 144 of 1936 has no application, and examine his contention that the case is controlled by Act No. 160 of 1934—which is said not to have been expressly or impliedly repealed by the former —we find that section 3 of that act, upon

which he mainly relies, reads as follows: "No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove provided."

The contention is that there was wilful misrepresentation amounting to fraud which defendant can plead, because there was a written application. The answer to this argument is, as it was to a similar contention made in Succession of Dekan v. Life Insurance Company of Virginia, La.App., 172 So. 37, 39, that there has been no concealment, consequently, no misrepresentation—wilful or otherwise. The act relied upon did not repeal Act No. 97 of 1908, as was expressly held in the Dekan case. It follows that the insurer had knowledge of the true condition of the applicant's health because the agent had such knowledge, and the subsequent issuance of the policy amounted to a waiver of the right to claim forfeiture on the ground that the answers in the application relating to the health of the insured are false.

In the Dekan case it was held: "'Wilful' mispresentation of the health of an applicant at the time of his application will void the policy, Fox v. Life Insurance Company of Virginia (La.App.) 170 So. 55; but where there has been no concealment, willful or otherwise, and the company has knowledge of the true condition of the health of the applicant, whatever may be the statement in the application, there has been no willful misrepresentation because there could not be. Act No. 160 of 1934 has not repealed Act No. 97 of 1908. That act declares that knowledge of the agent of the insurer or of its collector of premiums shall be imputed to it and that the subsequent issuance of a policy shall constitute a waiver of the right to claim a forfeiture of the policy on the ground that the answers in the application concerning the health of the insured are false. In the case at bar, there can be no question of the agent's knowledge that the answers which he wrote to the ques-

tions in the application to the effect that the applicant had not been attended by a physician in twelve months and had not used alcoholic stimulants to excess or opium or cocaine and had not been in a hospital were all false. He had known Dekan for several years, had collected premiums from him on another policy covering a period of two years. He called at his home, which was located over a saloon, and sold him a policy when he was under the influence of liquor. Under such circumstances the defendant waived the right to defend upon the ground that the answers were false, because it knew that they were false before it issued the policy."

Finally, however we may view the situation, whether under the general law of agency or as being controlled by Act No. 144 of 1936, or by Act No. 160 of 1934, the case is with the plaintiff.

For the reasons assigned the judgment appealed from is affirmed.

Judgment affirmed.

McCALEB, Judge (concurring).

While I concur in the result reached by my colleagues, because I am of the opinion that the knowledge of Coco was imputed to his employer under the general law and jurisprudence of the State, I am unable to agree in the conclusion that Act No. 144 of 1936 is applicable to this policy of insurance which was issued upon the written application of the assured.

It seems to be the view of the majority that, in order for the insurance company to be exempted from the provisions of Act No. 144 of 1936, it must show that its policy was issued without a medical examination and also without a written application being made by the insured. In other words, the interpretation which has been placed upon that statute is equal to changing the alternative particle "or" to the conjunction "and". I believe that this construction is strained in view of the unambiguous language of the statute and that it serves to defeat the obvious intention of the Legislature.

A brief history of the legislation here involved reveals that, under the original statute, Act No. 97 of 1908, a life insurance company, which saw fit to issue policies without a medical examination of the assured, was conclusively presumed to have full knowledge of his health, habits and occupation and it was precluded from later asserting (when sued upon its policy) that the assured had been guilty of misrepresentation. Such was the construction placed upon the statute by the Supreme Court in Eagan v. Metropolitan Life Insurance Co., 181 La. 16, 158 So. 575, and numerous other cases.

In the year 1934, the Legislature, in order to partially obviate the consequences resulting from the strict construction of the 1908 Act by the courts, passed Act No. 160 thereof wherein it is provided that fraud and wilful misrepresentation "shall always be a defense against any suit by the assured, if the insurer shall have obtained an application from the assured as hereinabove provided". The effect of Act 160 of 1934 was first considered by us in Fox v. Life Insurance Company of Virginia, 170 So. 55. There, it was held that, under the statute, the insurance company was entitled to assert the defense of fraud in the procurement of the contract where it had obtained from the insured a written application, even though it did not require a medical examination for the purpose of determining the desirability of the risk.

Later, in the Succession of Dekan v. Life Insurance Company of Virginia, 172 So. 37, we held that there could be no fraud in procurement of the insurance where the agent representing the company had actual knowledge of the health, habits and occupation of the assured. We further decided that Act No. 160 of 1934 had not repealed Act No. 97 of 1908 and that, where it appeared that the agent of the insurance company knew that the answers made by the assured, in his application for insurance, were false, the company was presumed to be possessed of such knowledge since Act No. 97 of 1908 created a legal presumption to that effect.

However, when the Legislature in 1936 enacted the statute now under consideration, it specifically exempted from its provisions all insurance companies writing policies either upon the faith of a written application by the assured or upon a medical examination. The substance of the Act is no more than a reenactment of the provisions of Act No. 97 of 1908 but it contains a specific proviso that it "shall not apply in the cases of reinstatement of policies that have been permitted to lapse, *or to policies which have been issued upon a written application* or medical examina-

tion of the insured". (Italics mine) It seems to me that the above quoted language is free from ambiguity and discloses a clear legislative design to make the law apply only to insurance companies issuing policies without a written application.

Apart from this, I feel that the majority have correctly determined the case forasmuch as, under the settled jurisprudence as set forth in Vol. 37, Section 262(b) of Corpus Juris, the knowledge of the insurance agent is that of his principal. It is too plain for extended discussion that fraud can only exist in cases where the party pleading it has believed the false representation and has acted on the faith of it. Since I am satisfied that Coco was fully advised and actually knew of the condition of the assured's health, the insurance company was not defrauded because the agent's knowledge must be imputed to his principal in the absence of a stipulation in the policy to the contrary.

For the reasons given, I respectfully concur in the decree.