Dora Tyson, the beneficiary of a policy of industrial insurance issued by the defendant, Victory Industrial Life Insurance Company, upon the life of Estella Brumfield, brought this suit to recover from it the avails of insurance, which she asserts to be the sum of $201. She alleges the issuance of the policy by the defendant on August 7, 1939; that the insured died on October 8, 1940, while the policy was in full force and effect; and that, notwithstanding amicable demand, payment of the proceeds has been refused by the defendant.
The defendant admits the issuance of the policy, the insured's death and that all premiums have been fully paid. It resists liability on the ground that the assured was guilty of fraud in the procurement of the insurance in that she wilfully misrepresented the true condition of her health and *West Page 604 
made false answers to questions propounded to her at the time she made written application to its agent for the issuance of the policy. It charges that, whereas Brumfield stated in her written application that she had never suffered with disease and had never been treated in any hospital, in truth and in fact, she had been admitted and treated at the Charity Hospital of New Orleans on five separate occasions for a disease of fifteen years' standing, and from which she subsequently died, she having full knowledge of this ailment at the time she applied for the insurance.
After a trial in the lower court on this issue, there was judgment in plaintiff's favor for the amount claimed and the defendant has prosecuted this appeal from the adverse decision.
In support of the charge of fraud and wilful misrepresentation on the part of the assured, the defendant submitted the testimony of its agent, Albert Simpson. He testified that he propounded the questions contained in the written application to one "pointed out" to him as Estella Brumfield, and the answers thereto were written in by him; that he had one Sophie Kennedy, who was then present, and who, according to his understanding, transacted all business for Dora Tyson, plaintiff, sign Estella Brumfield's name on the written application; that he thereafter delivered the policy at 2123 Clio Street in New Orleans, the address from which the application was procured.
Plaintiff, a sister of the assured, testified that she resided at 2123 Clio Street and that, at the time the written application was obtained, Estella Brumfield resided at 1212 Freret Street; that Simpson, defendant's agent, called at her home and there filled in the application; that Estella Brumfield was at no time present, she then being at work; that the only question asked by its agent was the name and age of the assured, which she furnished, all other answers contained in the application being filled out by him; that the only other person present was a woman named Sophie Kennedy, the latter signing the assured's name on the application at the request of the agent.
Plaintiff's testimony is fully corroborated by the testimony of Sophie Kennedy, she also positively stating that, at the time of the filling out of the application, Estella Brumfield was not present; and that she, Kennedy, signed the name of the assured to the application, as requested.
We are fully convinced that the charge of fraud and wilful misrepresentation cannot find the slightest support in the foregoing testimony. The record discloses that defendant's agent had severed his connections with another insurance company the day previous to obtaining the application in question, this being his first day of employment with defendant. As a consequence, he admits that he was "most eager" to obtain business, and that, having previously obtained other applications at plaintiff's home, he concluded that that place was preferable rather than soliciting, as he says, "cold business". Though he admits having known Estella Brumfield for over ten years, having seen and spoken to her on many occasions, he testifies that the assured was "pointed out" to him at the time the application was obtained, and that the questions called for therein were propounded to one "he supposed", or who "apparently", was Estella Brumfield. Certainly, personally knowing the assured, it is incredible that there would have been any need for identification, or indulgence in supposition or uncertainty.
Against this rather unbelievable version of this agent, we have the positive testimony of plaintiff and the witness who, it is admitted, was present at the time, and from which flows every appearance of sincerity and truthfulness. We are fully convinced that the assured was not present at the confection of the application in question, and that all answers therein recorded were the agent's own will and initiative, prompted, undoubtedly, by the commission to be earned and his desire to display to his employer his skill and cleverness as an aggressive solicitor. If any fraud was perpetrated, certainly it was that of its agent alone — fraud in submitting to his company a written application containing self-conceived representations of the health of the insured. Unquestionably, no stigma of fraud or wilful misrepresentation can be laid at the assured's door.
It is now well settled that the knowledge of the agent is that of his principal. Bordelon v. National Life Accident Insurance Company, La.App., 187 So. 112. In the case at bar, defendant does not question its agent's conduct in the performance of his duties, or that he exceeded the scope and authority of his employment. *West Page 605 
Neither does it charge a conspiracy to defraud between its agent and the insured. The fraud and misrepresentation charged being solely that of its agent, it cannot now be heard to avoid liability upon a policy issued by it and upon which it has received all premiums due.
Though its sole defense was an avoidance of liability upon the ground of fraud, counsel for defendant now urges before us, in argument and brief, that defendant's liability under the policy is limited, in any event, to one-fourth of the full death benefit, or $50.25. The reason urged in support of limitation of liability is that the insured died of a chronic disease within eighteen months from the date the policy was issued.
The evidence shows the contract was issued on August 7, 1939, and that the insured died on October 8, 1940.
The condition of the policy upon which the defendant relies to defeat recovery of the full death benefit reads as follows:
"2. * * * This contract shall be void if the Insured before its date, has been rejected for insurance by this or any other Company, or has been attended by a physician for, or has had before said date any scrofula, tuberculosis, paralysis, high blood pressure, diseases of the respiratory organs, cancer, epilepsy, or any disease of the brain, heart, liver or kidneys, syphilis or any venereal disease, * * *, or if the Insured shalldie from any of the aforementioned diseases or any chronicdisease contracted or occurring within eighteen months from thedate of policy, one-fourth of the stipulated sum otherwisepayable will be paid. * * *" (Italics ours.)
Plaintiff does not question the fact that the insured died of chronic ulcerative colitis with other diseases of the liver and attending complications more than six months, but less than eighteen months, after the issuance of the policy. She asserts that there should be no limitation of recovery in view of another clause in the policy which reads as follows:
"One-half of the above (full death benefit) if death occur within six months from date, and the full amount if death occur thereafter, except that in event of death from accident within six months from date full amount shall be payable."
Plaintiff contends that the foregoing condition is repugnant to and in conflict with the condition relied upon by defendant and that, since this provision states that the policy is one in full benefit after six months from its date of issuance, we should hold that it prevails over the other condition.
We are unable to discern any conflict or repugnancy between these two provisions. That relied upon by defendant declares that it shall pay no more than one-fourth of the full death benefit should death occur more than six months, but less than eighteen months, after the date of the policy, if death results from one of the named ailments. The other stipulation, relied upon by plaintiff, merely fixes the amount of the death benefit in case death should result from any cause within a fixed time from the date of the issuance of the policy. On the heading of the policy in question we find in bold type the following:
"Hereby insures the life of the person designated in the following schedule, and promises to pay the sum of money stipulated in such schedule, subject to the conditions andprivileges contained on this and the succeeding pages hereof andwhich constitute a part of this contract." (Italics ours.)
Upon examination of the policy, we find that the schedule, referred to in the last quoted proviso, therein fixes and makes payable the amount of the full death benefit after six months has elapsed from the date of issuance. The words "* * * to pay the sum of money stipulated in such schedule, subject to the conditions and privileges contained on this and the succeeding, pages hereof * * *" were obviously made part of this contract for the purpose of avoiding a conflict between the various conditions contained therein, and clearly exhibit that, because of the other provision of the policy, the full death benefit does not necessarily become payable even though it be shown that the policy has been in full force and effect more than six months. Here, the stipulation of the policy relied upon by defendant is dependent solely upon the death of the insured within a fixed time as a result of named diseases. We are convinced that its provisions are decisive of the issues presented. Our jurisprudence is well settled to the effect that such a condition is not unreasonable and will be enforced. Gray v. Louisiana Industrial Life Insurance Company, La.App., 193 So. 278; Moore et al. v. Southern Life Health Insurance Co., La.App., 195 So. 857. *West Page 606 
Plaintiff contends that, having failed to plead a limitation of recovery as a defense, defendant should not now be permitted to do so. The obvious answer to that contention is that plaintiff is seeking recovery upon a contract of insurance and her ultimate recovery must either stand or fall upon its terms and conditions. The policy of insurance being the source of her claim, she is bound by its provisions and is entitled only to such relief as the contract specifically affords. Defendant, having denied liability, and having prayed for all general and equitable relief, it is fully warranted, should recovery be allowed, in urging before us the enforcement of the contract in accordance with its provisions.
For the reasons assigned, the judgment appealed from is amended by reducing the amount awarded to Dora Tyson from the sum of $201 to $50.25, and in all other respects the said judgment is affirmed; appellee, Dora Tyson, to pay the costs of this appeal, and all other costs to be paid by the defendant.
Amended and affirmed.
 On Application for Rehearing.