DOLAN v. METROPOLITAN LIFE INSURANCE CO.

---

(June 24, 1929. Opinion and Decree.)

---

Bernard Cunniffe and Irwin F. Williams, of New Orleans, attorneys for plaintiff, appellee.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Plaintiff, as beneficiary, sued defendant life insurance company upon a life insurance policy on one Frank Lacaze. The policy was issued on February 2, 1925, and payable to the estate of the insured, but subsequently, plaintiff contends, was made payable to plaintiff as beneficiary, upon application of insured, concurred in by the insurance company. The insured died in the City of New Orleans on April 26, 1925.

At the time the policy was originally issued the age of the insured was given as forty years, but thereafter there was a correction of the age to read thirty-two years, the correction being stamped on the policy.

The defendant resisted the claim on several grounds as follows:

First: That plaintiff was not the beneficiary of the policy.

Second: That the policy contains the following provisions which were conditions precedent to defendant's liability.

"If (1) the insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof the insured has been rejected for insurance by this or by any other company, order or association, or has, within two years before the date hereof been attended by a physician for any serious disease or complaint, or before said date has had any pulmonary disease, or chronic bronchitis, or cancer, or diseases of the heart, liver or kidneys, unless such rejection, medical attention or previous disease is specifically recited in the 'space for endorsement' on page 4 in a waiver signed by the Secretary; or if (3) any policy on the life of insured hereunder has been previously issued by this company and is in force at the date hereof, unless the number of such prior policy has been endorsed by the company in the 'space for endorsements' on page 4 hereof (it being expressly agreed that the company shall not, in the absence of such endorsement, be assumed or held to know or to have known of the existence of such prior policy and that the issuance of this policy shall not be deemed a waiver of such last mentioned condition), then, in any such case, the company may declare this policy void, and the liability of the company in the case of any such declaration or in the case of any claim under this policy shall be limited to the return of the premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the company."

Third: That plaintiff had no insurable interest in the life of the insured, not

being related to the insured in any manner.

Fourth: And in the alternative that as the insured was fifty-three years of age instead of thirty-two that the case be remanded to the District Court for proof of the amount that would be due under such circumstances.

We shall dispose of the issues presented in the above order.

I. Plaintiff and her son both testified that after the policy had been issued and was in the possession of the insured and beneficiary, who lived in the same house, that the insured filled out a writ of application for change of beneficiary to plaintiff and delivered the policy with the application to the company's agent, Mr. Sanford, to have the change of beneficiary approved by the company. That in due course the policy was returned with a rider designating plaintiff as beneficiary. Upon the death of the insured the policy with the rider attached, was delivered to the defendant, but after the company had declined to pay the claim, it returned only the policy without the rider, notwithstanding repeated demands that the rider be also returned.

To rebut this evidence the defendant offered John R. Manasa, manager of the defendant's office at New Orleans, who, over objections of plaintiff's counsel, was permitted to testify as to the custom of the company in the change of beneficiaries on polices, by having the beneficiary's name stamped on the policy instead of a change by a rider attached to the policy. On cross-examination this witness admitted that he had only been in charge of the office at New Orleans for about four months. We believe the objection of plaintiff's counsel is well taken, the issue being whether or not through its agent, with the approval of the secretary or president of the company, change of beneficiary was made by a rider attached to the policy in question. It is to be noted that Mr. Sanford, whom plaintiff and her son testified is the agent that handled the change of beneficiary on the policy, was never called as a witness by defendant to rebut this evidence. We do not find anything in the policy that provides that the change of beneficiary must be stamped on the policy and are of the opinion that if a rider, properly approved by the company, was attached to the policy that it would be a legal change of beneficiary within the provisions of the policy. The provision governing the change of beneficiary, as found in the policy, reads as follows:

"This policy constitutes the entire agreement between the company and the insured, the holder and owner hereof. Its terms cannot be changed, or its conditions varied, except by the express agreement of the company evidenced by the signature of its President or Secretary. Therefore, agents (which term includes also Managers and Assistant Managers) are not authorized and have no power to make, alter or discharge contracts, to waive forfeitures or to receive premiums on policies more than four weeks in arrears, or to receipt for the same * * *"

The court finds that the preponderance of evidence is with the plaintiff on the question of changing the beneficiary.

II. We pass to a consideration of the provisions of the policy which were conditions precedent to defendant's liability.

Plaintiff proved by herself and her son that the insured had lived with them for about five years and that he had always been in good health except for minor ailments.

Dr. W. E. Vanzant, witness for plaintiff, testified that he had examined the

deceased on or about April 19, 1925, and diagnosed his case as inflammation of the stomach and bowels. That he had treated him for five or six days and during that time found no evidence of chronic miocarditis, having examined his lungs and heart with a stethoscope.

To rebut this evidence defendant sought to introduce in evidence, records of the Charity Hospital tending to prove that one Frank Lacaze, age 57, had been admitted to the hospital on March 1, 1923, for treatment and operation for hernia and that he remained in the hospital eighteen days. And also Charity Hospital report that one Frank Lacaze, age 52, had been admitted to the hospital September 26, 1923, and his ailment diagnosed as chronic miocarditis. Also report that Frank Lacaze, age 53, had been admitted to the hospital on April 25, 1925, suffering from dysentery. The reports were certified by the superintendent as being true and correct copies of the record on file at the Charity Hospital. Counsel for plaintiff objected to introduction of these reports on the ground that there had not been any foundation laid to connect them with the insured. The district judge admitted this evidence, letting it go to the effect and stating that it was the weakest kind of evidence.

We are of the opinion that the objection should have been sustained and this evidence ruled out, first on the ground that it was not properly connected with the insured and second because the reports were hearsay. See Act 242 of 1912 and Act 267 of 1928. We have, therefore, reached the conclusion that the plaintiff has established a prima facie case that the insured was alive and in sound health on the date the policy was issued and that he had not been attended by a physician for any serious disease or complaint for two years prior to the date of issuance of the policy.

It is contended, by the defendant, that there had been previously issued by the defendant company a policy in force on the date of the policy sued upon, on the life of the insured, and that under the provisions of the policy it was necessary that the number of such prior policy be endorsed by the company in the space provided on page 4 of the policy for that purpose, otherwise the subsequent policy would be void and the premiums paid on account of the policy be returned. The only evidence in the record showing that there had been a prior policy issued by the defendant company on the life of the insured, was the testimony of Mrs. Agnes Scully, niece of the deceased, to the effect that she had a small policy on the life of the insured. It was only on cross-examination of this witness that it was brought out that the policy was issued by the Metropolitan Insurance Company. However, the defendant company did not offer the policy in evidence, although Mrs. Scully claims to have been paid by the company and to have surrendered the policy to it. We do not find that the defendant has sufficiently proven that there was in existence a prior policy on the life of the insured, the best proof being the policy itself, which was never offered in evidence, although in possession of defendant, if in existence at all.

III. We now take up the defendant's contention of whether the plaintiff had an insurable interest in the life of the insured, not being related to him in any manner whatever. The plaintiff's evidence shows that the insured had lived with plaintiff and her son for five years and only occasionally visited his sister and his niece. That the insured knew of the existence of the policy because the

evidence shows that he made application for change of beneficiary. Plaintiff admits that she paid the premiums on the policy. The evidence shows that plaintiff paid the funeral expenses to bury defendant, and that during his last illness at her home, she attended to him and called in Dr. W. E. Vanzant, and upon the advice of a Catholic priest, removed him to the Charity Hospital, where he died. The defendant has not offered any evidence to to show that the policy was taken out by the plaintiff and not by the insured. There is nothing in the law of public policy which would prevent an insured from taking out a life insurance policy and designating a stranger as the beneficiary, and upon his inability to pay the premiums, permitting the beneficiary to pay them. In view of the lack of evidence to support defendant's contention this defense must also fall.

IV. We next pass to a consideration of the alternative defense that if the insured were fifty-three years of age instead of thirty-two years of age, then the case be remanded to the district court for proof so the proper amount of insurance, under the circumstances, would be paid.

The policy, as originally issued, gave the age of the insured as forty years, subsequently a correction of age was stamped on the policy by the company, giving his age as thirty-two years. Plaintiff and her son testified that he appeared to be about thirty-five or forty years of age. It is to be noted that these witnesses were cross-examined by attorney for defendant, but no effort made to get a complete description of the insured, tending to show if he were a young or old man. It is also to be noted that when Dr. W. E. Vanzant was on the stand he was also cross-examined and, although he treated the insured for five days, no effort was made to establish the insured's apparent age by the doctor.

Defendant offered Mrs. Scully, niece of the deceased, as a witness, who testified as follows:

"Q. How old a man did he appear to be?
"A. He looked to be a man about 55 or 58.
"Q. Do you know how old he was?
"A. Well, between fifty and fifty-two."

But on cross-examination this witness admitted that she did not know the date that the insured was born. This witness also testified that her mother, sister of the insured, had been to see her brother the day before he died. The defendant did not offer this lady as a witness and there is nothing in the record to show that she was not available as a witness.

The proof of death signed by plaintiff gives the date of birth of the insured as March 4, 1892, at New Orleans. Defendant did not produce any birth certificate to show that this day was erroneous and there is nothing in the record to show that a birth certificate could not be secured.

Defendant contented itself with showing that the duplicate original sent by the Charity Hospital to the Recorder of Deaths at the City Hall, had been altered to make it read thirty-two years instead of fifty-three years, as shown by the duplicate original on file at the Charity Hospital. There is nothing in the record to show that plaintiff, at any time, had possession of either of these records, and, therefore, cannot be held accountable for any discrepancy between the two. The defendant has not shown which of the two is correct. This Court cannot assume that the duplicate original on file at the Charity Hospital states the correct age

when it is entirely unsupported. The duplicate original of the Recorder of Deaths stated the age as thirty-two and this age is supported by the plaintiff's evidence.

It is to be noted that the district judge permitted the reopening of the case after the delay for asking for a new trial had elapsed, and permitted defendant to take further testimony which, in our opinion, together with the evidence previously offered was insufficient to rebut plaintiff's proof.

As this case presents only a question of fact and the lower court decided it in favor of plaintiff, the rule that an appellate court will not disturb a judgment of the lower court unless it is clearly erroneous is applicable.

For the reasons assigned the judgment of the district court is affirmed at the cost of appellant.

---

JANVIER, J., dissenting. I am quite convinced that the deceased had been seriously ill and had been in the hospital during the two years preceding the issuance of the policy, and that, therefore, the warranties in the policy were not complied with. I have no doubt that the deceased is the same party and that the attempts to change the age shown on the copy of the record sent by the Charity Hospital to the Board of Health should be sufficient in itself to show that those most at interest realized that they could not recover except by clouding the facts with doubt. In my opinion they have not done so, but have shown conclusively that recovery should be denied.

For these reasons I respectfully dissent.