## LADO v. FIRST NAT. LIFE INS. CO.*
### No. 14810.

Court of Appeal of Louisiana. Orleans.
Feb. 4, 1935.

*Rehearing denied Feb. 18, 1935.

Puneky & Barrios, of New Orleans, for appellant.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellee.

## WESTERFIELD, Judge.

This is a suit by a beneficiary, on a policy of industrial life insurance, claiming the sum of $106.40. The defense is based upon condition 9 of the policy which exempts from coverage death resulting from a number of causes, including venereal disease, of which the deceased policyholder is said to have died.

There was judgment below in favor of defendant, and plaintiff has appealed.

It is contended on behalf of plaintiff that the provisions of the policy relied on have been waived because no medical examination of the assured was had, and, in the alternative, that defendant has failed to establish by competent evidence that the assured died of a venereal disease.

Upon the first point advanced by plaintiff's counsel reliance is placed upon Act No. 97 of 1908, the title of which reads: "An Act Providing that life, health and accident insurance companies, which issue policies or contracts of insurance to the assured without a medical examination by a physician, shall waive their right to claim forfeiture for misrepresentation, etc.; under certain conditions."

Section 1 of the act provides that, when contracts or policies of insurance are issued without medical examinations and the agent of the company has had an opportunity to ascertain the condition of health, habits, or occupation of the assured, the insurer shall be presumed to have waived its rights to claim a forfeiture of the policy "based on the ground that the assured did not make true and full answers in the application as to the health, habits or occupation, whenever it shall appear that the agent of the company knew, or might have ascertained with reason-able diligence, the true condition of the applicant's health, or the real facts as to his habits or occupation, knowledge of the agent of the company in writing the application, or of the collector of the company in collecting the premiums from the assured, shall be imputed as notice to the company, as to the health, habits or occupation of the assured." This act has been held applicable to a situation where the insurer denied liability upon the ground that the assured was not in good health (suffering from cancer) at the time the policy was issued, under a clause in the policy which exempted the insurer from liability when an applicant for insurance has had within two years of the date of the issuance of the policy "any pulmonary disease, or chronic bronchitis, or cancer, or disease of the heart, liver or kidneys," unless such disease was disclosed in the application and a waiver signed by the company indorsed on the policy. Mrs. Lena Romano Eagan v. Metropolitan Life Insurance Company (La. Sup.) 158 So. 575, 576, decided November 26, 1934. But in the case before us there is no question of misrepresentation at the time the policy was issued, nor is there any contention that the assured was afflicted with an undisclosed disease at that time. The defense is based upon another and a different ground, to wit, that the death of the assured was due to a cause especially exempted from coverage under the terms of the policy. There is no contention here of the state of health of the assured when the policy was issued, but simply that in the insurance contract between the parties the insurer did not assume the risk of the death of the assured from venereal disease.

There can be no doubt of the right of parties to contract within the limits of public policy for such forms of insurance as may be agreed upon, and we know of no reason why the coverage of a policy should not be limited by exempting certain specified risk as was done in this case. If the insurer and the assured should agree upon a contract of insurance covering the death of the assured from only one cause, say, tuberculosis, we know of no legal objection to such an agreement. In our opinion the act relied on has no application.

As to the sufficiency of proof of the cause of death of Emile Thibodeaux, we find from the record that he died in the Charity Hospital of this city, and that an autopsy was held by Dr. Von Haam, the senior pathologist of that institution. Dr. Von Haam testified that he died as a result of "Luetic

and athermoatous aortitis with insufficiency of aortis valves, marked dilation and hypertrophy of entire heart, passive congestion of inner organs adenoma of kidney," which, it is explained, is an inflammation of the aorta caused by syphilis. Dr. Von Haam testified from his records, which were prepared by himself and which also formed part of the official records of the Charity Hospital. His testimony was objected to upon the ground that he had not seen the deceased in his lifetime, and that therefore he was incompetent to testify as to the cause of his death, and upon the further ground that the records of the Charity Hospital, when objected to, are inadmissible because hearsay. Gaines v. Acme Industrial Life Ins. Co. (La. App.) 155 So. 276; Dolan v. Metropolitan Life Ins. Co., 11 La. App. 276, 123 So. 379; Ayo v. Holzenthal, 19 La. App. 562, 141 So. 92.

The cases cited are authority for the proposition that the Charity Hospital records are hearsay and that testimony of medical experts based upon such records is objectionable upon the same grounds, but here we have the pathologist who performed the autopsy on deceased and the records of the hospital prepared by him as a result of his official duties. Such evidence is certainly not hearsay, and is unobjectionable on that ground. As to the contention that a physician who performs an autopsy is in a less favorable position to determine the cause of death than one who treated the deceased before his demise, it is equally without merit. It is our understanding, based upon the testimony of medical experts in a number of similar cases, that an autopsy is the most reliable method of determining the cause of death and, in many instances, the only one. Such was the opinion of our brothers of the Second Circuit, who in Jackson v. Travelers' Ins. Co., 151 So. 790, 794, said:

"The opinions of physicians who saw deceased are of greater weight than those who did not. Hammons v. Edwards, 9 La. App. 62, 118 So. 852; Arender v. Grant Timber & Mfg. Co., 9 La. App. 132, 119 So. 498, 499.

"Especially is this true of competent physicians who perform an actual autopsy. We understand that an autopsy is the only certain way to determine the cause of death."

The objection to the testimony of Dr. Von Haam was properly overruled.

The plaintiff introduced a number of witnesses who had known the deceased, all of whom testified that he had apparently been in good health up to the time of his last illness. While such testimony is not without probative value, it cannot prevail over the opinion of an expert pathologist based upon an autopsy which he personally performed.

Our conclusion is that the judgment appealed from was correct; consequently, it is affirmed.

**Affirmed.**