### SAMPSON v. LIFE & CASUALTY INS. CO. OF TENNESSEE.

No. 16624.

Court of Appeal of Louisiana. Orleans.

June 14, 1937.

John T. Charbonnet, of New Orleans, for appellant.

Cabral, Lenfant & Villere, of New Orleans, for appellee.

McCALEB, Judge.

This is a suit on a policy of industrial life insurance by the beneficiary named therein, in which the face value of the policy, $124, is claimed.

The defendant insurer resists liability on the following grounds: (1) That the policy had lapsed for nonpayment of premiums on May 6, 1935, and that it was never effectively reinstated, notwithstanding an abortive effort to accomplish this result. (2) In the alternative, if it should be held that the revival application made by the insured on July 24, 1935, had the effect of reinstating the policy, then the policy is nevertheless void because the insured made certain material false representations concerning the condition of her health in her application for reinstatement.

There was judgment below in favor of the defendant, dismissing the plaintiff's suit, and he has appealed.

The first question presented for our consideration pertains to the reinstatement of the policy. It appears that, on July 24, 1935, the policy having lapsed for nonpayment of premiums from and after May 26, 1935, the assured made written application for revival. In this application, the insured agreed: "I hereby declare that the statements recorded above are true and complete, and I agree that any misrepresentations on this revival application shall render the policy void; and that the policy shall not be binding upon the Company unless upon the date this application is approved I am alive and in sound health."

Two days prior to the making of the revival application, the insurance company accepted from the assured premiums in the sum of $1.30. The assured died on July 29, 1935, and the revival application was approved on August 5, 1935. Inasmuch as the insurance company reinstated the policy, we can attach little importance to the fact that the assured died prior to the date the application was approved.

The reinstatement had the effect of granting coverage to the insured from the date of lapse on May 6, 1935, until the date of her death on July 29, 1935, and we hold that the defendant cannot now assert that the application for revival of the policy was ineffective, in view of its

approval on August 5, 1935. The clause in the policy, which provides that the application for reinstatement shall not be effective unless on the date thereof the insured is living, was inserted solely for the benefit of the insurance company. If the defendant had refused to reinstate the policy, the point insisted upon might be well taken, but the fact that it approved the application for revival now · estops it from claiming that coverage was not granted until the date of the insured's death. Should we conclude otherwise, the result would be to permit the insurer to receive and earn premiums for the period elapsing from the date of the application until the time the policy is issued or reinstated, without granting protection to the insured. Compare Embert v. Woodmen of the World, 2 La.App. 140, and other cases where the revival applications were either rejected or not acted upon in reasonable time.

The next contention made by the defendant is that the policy is void because the insured made certain false statements in the revival application concerning the condition of her health. To substantiate the defense, it offered in evidence a record of the Charity Hospital which shows that the assured had been treated in that institution for syphilis, carcinoma of the cervix, and vesicovaginal or uterine fistula covering a period from July 30, 1934, to April 25, 1935. This record, if admissible in evidence, amply and plainly exhibits that the insured made false statements in regard to her health when she applied for a reinstatement of the policy, because in her application she represented that she was in good health and had never been treated in any hospital or by a physician. Under our opinion in Fox v. Life Ins. Co. of Virginia, 170 So. 55, in interpreting Act No. 160 of 1934, we held that fraud or material false statements made in an application for industrial life insurance had the effect of voiding the policy, and there is no distinction in principle between that case and the instant one.

However, counsel for plaintiff objected to the introduction of the Charity Hospital record on the ground that it was hearsay, and his main argument in this court is directed against the action of the trial judge in allowing the document to be admitted in evidence.

Shortly after the suit was filed, the defendant insurance company applied for and obtained an ex parte order for the Charity Hospital to furnish a certified copy of the hospital record of Evelyn Jefferson, the insured. In compliance with this order, the hospital delivered to defendant's counsel a certified copy of a chart or record of the illness of the insured, which is signed by Roy W. Wright, assistant superintendent. The defendant offered this chart in evidence under the provisions of Act No. 108 of 1936, which provides: "That whenever a certified copy of the chart or record or either of the Charity Hospitals of this State, *signed by the Superintendent or Secretary Treasurer of the Board of Administrators of such Hospital,* is offered in evidence in any Court of competent jurisdiction, it shall be received in evidence by such Court, *as prima facie proof of its contents, provided that the party against whom the said record is sought to be used shall have the right to use those making the original of said record as witnesses under cross examination.*" (Italics ours.)

Prior to the passage of the foregoing statute and Act No. 170 of 1932, records of the hospitals of this state were not open to public inspection except in cases arising ex delicto. Act No. 242 of 1912, as amended by Act No. 185 of 1916 and Act No. 255 of 1920, commonly known as "The Public Records Act," declares that all records, writings, etc., being in use or prepared for use in the conduct of any business or transaction or the performance of any function conducted, transacted, or performed by and under the authority of the Legislature, are public records and are available for public use save for certain exceptions not pertinent here.

Act No. 267 of 1928 exempts from the provisions of Act No. 242 of 1912 charts and records of the public hospitals of Louisiana save and except when the illness of the patient be due to an accident, poisoning, negligence, or other presumable negligence resulting in any injury, assault or any act of violence or a violation of the law.

In construing the foregoing statutes in the case of Dolan v. Metropolitan Life Ins. Co., 11 La.App. 276, 123 So. 379, we held that Charity Hospital reports were hearsay and therefore not admissible in evidence. Since our decision in that case, the Legislature has passed Act No. 170 of 1932 and Act No. 108 of 1936 (above quoted).

Act No. 170 of 1932 provides that, when any court of competent jurisdiction has ordered the production of a chart or record of the Charity Hospital, certified copies of such chart or record, signed by the superintendent or secretary treasurer of the board of administrators of the hospital and attested to by the seal of such hospital, shall be received in evidence with the same force and effect as though the original document were produced, and it shall be sufficient for the hospital, in compliance with such court order, to furnish a certified copy. That act impliedly repealed Act No. 267 of 1928, with respect to the production of hospital records under court order, and the main purpose of its passage was obviously for the convenience of the Charity Hospital, and permitted it, in compliance with a writ of subpoena duces tecum, to supply the court with certified copies of its records in lieu of the original documents. It did not affect the probative value of the records produced and did not grant the courts the right to take such records out of the hearsay rule unless they could be properly identified by the persons making the originals. But Act No. 108 of 1936 (under which the chart before us was admitted in evidence) clothes the chart of the Charity Hospital, certified in accordance with it, with probative force and declares that the certified copy shall be prima facie proof of its contents. The Legislature, however, wisely reserved the right of the person, against whom the record is used, to call for cross-examination the party or parties making the original entries.

The plaintiff complains that, under the ruling of the trial judge, he was deprived of the right of cross-examination which was granted to him by the statute. We find no merit in this point because he was aware of the fact that the Charity Hospital record would be offered against him, inasmuch as the defendant set forth, in its answer, that the records of that institution disclosed that the insured had been treated there. Therefore, having knowledge of the fact that these records would be offered by the defendant, counsel for plaintiff should have moved for a continuance of the case and requested the court to allow him time to summon the persons, who made the record, for cross-examination. We believe that it would be a far better practice for a party litigant desiring to take advantage of the provisions of Act No. 108 of 1936, to apply to the court for a subpoena duces tecum and thus give his opponent ample opportunity to summon the witnesses, who made the record sought to be used, for cross-examination. Be that as it may, the plaintiff here was undoubtedly aware of the fact that the chart of the hospital would be used against him in evidence and he should have, in protection of his right to cross-examination, summoned the witnesses making the record, in advance of the trial.

Counsel for plaintiff also maintains that the chart or record is inadmissible because it is certified to by the assistant superintendent of the hospital, whereas the statute requires that it be certified by the superintendent or secretary treasurer of the board of administrators. We find considerable force in this postulation. The Legislature has provided that these certified copies of records or charts are admissible in evidence and constitute prima facie proof of their contents when they are signed by the superintendent or secretary treasurer of the board of administrators of the hospital. It is plain that the designation of the superintendent or secretary treasurer of the board is exclusive and negatives the right of any other official connected with the hospital to sign the certified copies which are to be used in a court proceeding.

In view of the requirements of the law, the trial judge was in error in admitting into evidence the record of the Charity Hospital which is not certified in accordance with the statute. We believe that, under the circumstances of the case, it should be remanded for a new trial and that the defendant should be accorded the right to have the hospital record admitted in evidence (if properly certified), with reservation to plaintiff of the right to call the persons making the original record for cross-examination.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that this cause be remanded to the First city court of New Orleans for further proceedings according to law and consistent with the views herein expressed. Defendant and appellee to pay the costs of this appeal.

Reversed and remanded.