**GEDDES & MOSS UNDERTAKING & EM-BALMING CO., Limited, v. FIRST NAT. LIFE INS. CO.***

No. 16698.

Court of Appeal of Louisiana. Orleans.

Jan. 10, 1938.

Normann & Bethea and H. M. Rouchell, all of New Orleans, for appellant.

John T. Charbonnet, of New Orleans, for appellee.

*Rehearing refused Jan. 24, 1938.

McCALEB, Judge.

The plaintiff filed this suit as assignee of the beneficiary of an industrial life insurance policy issued by the defendant insurance company on the life of Nancy Taylor for the face amount of $250. It alleges the issuance of the policy, payment of premiums, death of the assured, and proof of death, the assignment by the beneficiary, and the defendant's refusal to pay and prays for judgment for the full value of the policy plus 6 per cent. interest from April 8, 1936, and for all costs.

In due course, the defendant answered admitting the issuance of the policy, the payment of all premiums, the death of the assured, the proof of death, and the assignment. It resisted liability, however, on the ground that the policy was null and void for the reason that the assured, in her written and signed application for the policy, had, in answer to the questions propounded, willfully and fraudulently affirmed her good health, denying any former illness and specifically disclaimed that she had ever suffered from heart disease, ulcers, kidney trouble of any kind, whereas, in truth, she had, for over three years prior to the date of the application, been ailing with and had received treatment for heart disease, chronic diabetes and ulcers, from which illnesses she ultimately died. The defendant further pleaded, in the alternative, that, should the court find it liable, its responsibility cannot exceed one-fourth of the death benefit, in view of certain limitations contained in the policy.

On these issues, a trial was had in the first city court of New Orleans and evidence, in proof of the defense, was admitted by stipulation of the parties, subject to an objection interposed by counsel for plaintiff concerning its relevancy. After consideration of the case, the trial judge found for the plaintiff and granted judgment against the defendant for the full amount in controversy. This appeal results from the adverse decision.

The chief dispute between the parties hinges upon the admissibility of the evidence tendered by the defendant company in support of its answer. The question, thus presented, involves an interpretation of Act No. 160 of 1934, relied upon by the defendant as authority for its defense.

The policy in suit was written without requiring the insured to undergo a medical examination and the application for the insurance, while made in writing, was not attached to and made part of the contract. It was issued prior to the enactment of Act No. 160 of 1934, but this suit was filed subsequent to the date that law became effective. It is conceded by counsel for the defendant that, under the law and jurisprudence as it existed prior to the enactment of Acts Nos. 134 and 160 of 1934, the defense made by it (concerning the fraudulent representations of the assured contained in her application) could not have been considered by the court because the assured's application was not attached to the insurance policy and since it failed to require a medical examination, which would have revealed the assured's ill health, at the time she applied for the insurance. See Act No. 52 of 1906, as amended by Act No. 227 of 1916, § 2; Whitmeyer v. Liberty Industrial Life Ins. Co., 166 La. 328, 117 So. 268; Act. No. 97 of 1908, as amended by Act No. 195 of 1932, and Eagan v. Metropolitan Life Ins. Co., 181 La. 16, 158 So. 575.

It is likewise admitted by counsel for the plaintiff that if Act No. 160 of 1934 is given retroactive effect, then his objection to the admissibility of the evidence tendered by the defendant is not well founded because, under the decisions of this court in Fox v. Life Ins. Co. of Virginia, 170 So. 55; Succession of Dekan v. Life Ins. Co. of Virginia, 172 So. 37; Pons v. Tharp-Sontheimer Industrial Life & B. Ins. Co., 173 So. 205, and Sampson v. Life & Casualty Ins. Co. of Tennessee, 175 So. 148, in construing Act Nos. 134 and 160 of 1934, it has been held that the application for insurance, if in writing, need not be attached to the policy to be received in evidence and also that the fraudulent representations of the assured in such application, concerning his health, will be deemed sufficient to cause a forfeiture of the policy.

It is manifest, from the foregoing, that, unless Act No. 160 of 1934 can be interpreted to have retrospective force, the defense is barred by virtue of the laws which were in operation at the time the contract was made. Counsel for the defendant maintain that the act in contest prescribes remedial legislation; that it relates to procedure and hence is retroactive in its operation and they point with confidence to two cases decided by our brethren of the Courts of Appeal of the First and

Second Circuits wherein the contention urged for has been resolved in their favor.

On the other hand, counsel for the plaintiff argues that (1) Act No. 160 of 1934 does not provide remedies; that (2) even though we decree it to be a remedial statute, it cannot be held to be retroactive in effect since the wording of the act discloses a legislative intention for prospective operation only, and that (3) at all events, it should not be interpreted retrospectively because such a conclusion would deprive the plaintiff of substantial contractual rights which became vested in the assured under prior laws.

These postulations invite a discussion of the language contained in Act No. 160 of 1934. Preliminarily, we observe that Act No. 52 of 1906, as amended by Act No. 227 of 1916, § 2 as well as Act No. 97 of 1908 (the laws which governed the contract at the time it was written), are general laws applying to all life insurance companies.

Conversely, Act No. 160 of 1934 is a special statute in that it is limited to industrial insurance companies. By its terms, all industrial life insurance companies doing business in this state are required, prior to the issuance of any policy, to have the assured make written application for the policy. Section 1 provides:

"Be it enacted by the Legislature of Louisiana, that *hereafter* before any corporation, association or organization shall issue any policy of industrial life insurance in this State, the applicant for such policy shall be required to make an application in writing therefor to the insurer and to sign the application with his genuine signature, or ordinary mark, as the case may be, in which event the written and signed application shall be the basis for issuing the policy of industrial life insurance so applied for, and shall be a part of the contract of insurance issued thereon, whether or not the application or a · copy thereof be attached to or indorsed upon the policy when issued." (Italics ours.)

The use of the word "hereafter" in the statute indicates an intention on the· part of the Legislature to restrict its operation to all policies issued by industrial life insurance companies after the act became a law. In short, it is prospective in its effect. Section 2 of the act reads:

"If any corporation, association or organization as above mentioned shall issue any policy of industrial life insurance without obtaining a written and signed application by the applicant therefor, then such unsigned application shall be inadmissible in evidence as a basis of defense in any suit upon the policy by the insured for the collection of the policy, nor shall parol evidence of the contents of such application be admissible in evidence."

And section 3 declares:

"No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, and provided further, that fraud shall always be a defense against any suit by the assured, *if the insurer shall have obtained an application from the assured as hereinabove provided.*" ·(Italics ours.)

We think that the wording of the statute, taken as a whole, clearly proclaims that its operation is to be limited to policies of industrial ˙life insurance issued subsequent to the time when the act went into effect.

Article 8 of the Revised Civil Code provides:

"A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."

█ It is the settled jurisprudence of this state, in line with the above-mentioned codal provision, that all laws are prospective in their operation unless they are couched in such language as to plainly evince that the Legislature intended that they should apply to past events. See Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184.

█ There is, however, an exception to this general rule and that is that, if the statute is purely remedial in its nature, it may have retroactive or retrospective force. See Landry v. Grace, 167 La. 1042, 120 So. 770; ·Whittington v. Payne, 151 La. 595, 92 So. 128; Cassard v. Tracy, 52 La.Ann. 835, 27 So. 368, 49 L.R.A. 272, and Dunning v. West, 51 La.Ann. 618, 25 So. 306. Notwithstanding this, it is certain that a statute, even though it be remedial in that it relates to judicial procedure, cannot be given retrospective force where the language used reveals a leg-

islative intent that its provisions are applicable only to contracts entered into after its passage. Corpus Juris, Vol. 59, pages 1170 and 1171, in speaking of remedial statutes, informs:

"So, in accordance with the general rule that remedial statutes should be liberally construed so as to suppress the mischief and advance the remedy, such statutes will be construed to have a retrospective operation *whenever the intention of the Legislature is clearly indicated,* provided such construction does not disturb vested rights, does not destroy existing contracts, and does not create new obligations, *but not if the intention to give the act a retrospective effect is not so clearly found as to satisfy the court that such was the intention, and if, from the reading of the act, the court is doubtful whether such was the intention, the doubt must be resolved against the retrospective effect.*" (Italics ours.)

■ So, here, we say that the use of the word "hereafter" in the statute now under discussion plainly evidences that it was the will of the Legislature that the law should not apply to policies issued prior to its enactment. It is believed that this conclusion is fortified by the decision of the Supreme Court in the case of Hurry v. Hurry, 141 La. 954, 76 So. 160, 161. There, the statute considered was Act No. 269 of 1916 which permitted a divorce to married persons who have been living separate and apart for a period of seven years or more. It was found that the act had retrospective force because the words "that when married persons have been living separate and apart for a period of seven years or more," etc., conveyed an intention to cover the past status of the parties. But in reaching that result, the court remarked:

"To construe the act to mean what is contended for by the defendant, the Legislature should have said 'That when married persons shall *hereafter* live separate and apart for a period of seven years or more,' etc., or words of similar import." (Italics ours.)

We realize that the view herein adopted by us, with respect to the operation of Act No. 160 of 1934, is in conflict with the holdings of the Second Circuit Court of Appeal in Washington National Ins. Co. v. McLemore, 163 So. 773, 775, and the First Circuit Court of Appeal in

Sawyer v. Liberty Industrial Life Ins. Co., 171 So. 415, and Id., 172 So. 24.

In the McLemore Case, suit was brought by the insurance company to cancel a policy issued upon the life of one Andrew Jackson on the ground that the beneficiary of the policy, in applying for the insurance, had falsely misrepresented the age of the insured. The action was instituted against this beneficiary and she objected to any evidence in proof of the falsity of the statements contained in the application on the ground that, under Act No. 52 of 1906, as amended, the application was inadmissible in evidence because it was not attached to the policy. The plaintiff insurance company, however, invoking the provisions of Act No. 160 of 1934, contended that that statute was remedial and should be given retroactive effect. The court, in deciding the case in favor of the plaintiff, held that Act No. 160 of 1934 related solely to procedure and was therefore retrospective in its operation. The opinion states:

"The policy in this case was issued February 13, 1933, before, and the case tried on the 7th day of March, 1935, after, the enactment of Act No. 160 of 1934.

"'Remedial statutes and statutes governing procedure have application to all actions brought subsequent to their promulgation.' State v. Brossette, 163 La. 1035, 113 So. 366, 367; Rossville Commercial Alcohol Corp. v. Dennis Sheen Transfer Co., 18 La.App. 725, 138 So. 183.

"'A remedial statute is one which confers a remedy and a remedy "is the means employed to enforce a right or redress on injury."' Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 630, 97 A.L.R. 1184; Dehan v. Hotel and Restaurant Employees et al. (La.App.) 159 So. 637."

The court then quotes Bouvier's definition of procedure, 2 Bouv.Law Dict., Rawle's Third Rev., p. 2729, which includes in its meaning whatever is embraced by the three technical terms pleadings, evidence, and practice, and concludes as follows:

"Considering these authorities and Act No. 160 of 1934, we think that the testimony objected to was admissible, and that, as it clearly proves fraud on the part of defendant in obtaining the issuance of the policy, the judgment ordering its cancellation is correct."

In Sawyer v. Liberty Industrial Life Ins. Co., 171 So. 415, and Id., 172 So. 24, the

Court of Appeal of the First Circuit, following the decision of the Second Circuit Court of Appeal in the McLemore Case, came to the same conclusion.

We are in full accord with the deductions of our brethren to the effect that Act No. 160 of 1934 is a remedial statute in that it entirely relates to procedure. But we differ in respect to the result reached by them that, because the act is remedial, its operation is retrospective. It is to be noted that, in neither the McLemore Case nor the Sawyer Case, is the language of the statute discussed in the opinions and it is patent that the courts' attention was not directed to it by the litigants in those cases.

■ . Being of the opinion that the policy in this case is governed by the provisions of Act No. 52 of 1906 and Act No. 97 of 1908, the defendant is precluded from maintaining that the policy is null by reason of the fraudulent representations made by the assured in the application for insurance.

■ We consider, finally, the extent of the defendant's liability on the policy. Defendant insists that its liability should be limited to one-fourth of the face value of the policy and it points to two stipulations in the contract to substantiate the contention. The death benefit provided for is $250 and on the face of the policy is found the following provision: '

"One-half of the death benefit provided for in above schedule is payable by the Company should death occur from any accident occurring or illness contracted before this Policy has been in force for six months."

And on the reverse side of the policy, under conditions 9, it is covenanted:

"9. * * * Or if the Insured shall die from Heart Disease, Tuberculosis, Chronic Bronchitis, Cancer, Bright's Disease, Liver Trouble, Pellagra, or any chronic disease contracted before this Policy has been in force for twelve months, only one-half the sum otherwise provided for under this Policy will be payable."

The policy was issued on July 23, 1934, and the insured died on April 7, 1936, of hypertensive heart disease and diabetes. It is conceded that she had suffered with the ailments causing her death long before the policy was issued. Defendant argues that the language contained in the first clause is free from ambiguity and that it clearly provides that if the assured dies from an illness contracted any time before the policy has been in force for six months, then one-half of the death benefit is payable. It further maintains that, under conditions 9, if the insured dies of a chronic disease contracted at any time prior to the date of the policy or before the contract has been in force for twelve months, then only one-half of the sum otherwise provided for will be payable. From this premise, it is contended that the assured, having died from an illness contracted prior to the issuance of the policy, is entitled to one-half of the death benefit and that, because this illness happened to be one of the chronic diseases mentioned in conditions 9 of the contract, only one-fourth of the face value of the policy is due.

We cannot agree that the clauses above quoted are clear and explicit. On the contrary, an examination of their wording sufficiently displays a perplexing vagueness of meaning in respect of whether the parties intended that all illnesses and chronic diseases contracted prior to the issuance of the policy fall within the limitations. This question immediately leaps to the eye in this case since the uncontroverted evidence shows that the assured died from diseases contracted by her long before the policy was written.

It is also apt to remark that these clauses of limitation are unusual in that their operation is secured through the insured's contraction of an illness or a disease within a certain time which ultimately results in death. In many policies, where conditions limiting recovery of the full benefit are inserted, the operation of such restriction is made dependent upon the death of the assured. Here, however, the conditions limit the recovery where the death occurs from illnesses or diseases contracted within a specified period. In other words, no matter when the assured dies, the liability is restricted if the death is caused by an illness or chronic disease contracted within a certain time after the policy was issued and, according to the defendant's theory, its application likewise includes illnesses which had been acquired prior to the making of the contract. In order to determine the soundness of the defendant's argument, it is necessary to examine the wording of the restrictive clauses.

The provision contained on the face of the policy stipulates that one-half of the

death benefit is payable "should death occur from any accident occurring or illness contracted before this Policy has been in force for six months." Does this mean that the accidents occurring or illnesses contracted prior to the existence of the policy resulting in death restrict the recovery or was it intended that the limitation was to be confined only to accidents or illnesses suffered after the contract was made but before it had been in force for six months?" We find no difficulty in resolving that the limitation clearly applies to accidents and illnesses occurring within six months from the date of the policy, but we entertain considerable doubt as to whether the language used is sufficient to evidence an intention that the restriction is to cover illnesses contracted prior to the issuance of the policy.

In an attempt to perceive the real intent, it may be helpful to consider that part of the clause referring to accidents resulting in death. Is it plausible to conceive that the parties intended that one-half of the death benefit would be payable in the event death should occur as a result of any accident which happened prior to the issuance of the policy? We think not. The same is true with respect to illnesses "contracted before this Policy has been in force for six months." If it had been intended that the limitation should be operative with respect to illnesses contracted before the policy was issued and during a period of six months after it was in force, it would have been so easy to say so. It is also well to remember that, in considering an ambiguous clause in a contract of insurance, the court should adopt an interpretation most favorable to the assured and against the insurance company since the latter is the author of the contract. We therefore conclude that the limitation does not apply to illnesses contracted by the assured before the policy came into existence, and since the language contained in "Conditions 9" is substantially identical with that found in the clause heretofore discussed, our view is the same with respect to the interpretation to be given to the latter.

██ Moreover, were we to interpret these limitations in the manner contended for by the defendant, the clauses would be invalid because their enforcement would accomplish a partial forfeiture of the policy in violation of Act No. 97 of 1908. It should be borne in mind that Act No. 97 of 1908 proclaims, in substance, that any insurance company issuing policies without first requiring a medical examination of the assured is presumed to have knowledge of the assured's health, habits, and occupation and that such company waives the right to claim a forfeiture of the policy on the ground that the statements made by the assured in the application for insurance were false. Here, the defendant has written a policy which, if construed in the manner maintained for, would work a partial forfeiture of the coverage granted and would sanction its avoidance of the provisions of Act No. 97 of 1908.

But counsel for the defendant assert that this result is not accomplished for the reason that the limitations and restrictions on its liability refer merely to the coverage granted by the policy and not to a forfeiture of contractual rights which became vested in the assured under Act No. 97 of 1908. They point with confidence to the case of Lado v. First National Life Ins. Co., decided by this court in 158 So. 872, and later affirmed by the Supreme Court in 182 La. 726, 162 So. 579, and proclaim that the clause considered in that case is the same as the clauses now under discussion. But an examination of the Lado Case reveals that the provision there upheld is entirely different from the restrictions here relied upon by the defendant. There, the clause involved provided:

"Benefits will not be paid at any time for death resulting from violation of law, immorality, alcoholism, venereal diseases or insanity."

The assured, in that matter, died of a venereal disease contracted prior to the issuance of the policy and the question involved was whether Act No. 97 of 1908 could be invoked. The Supreme Court held that the clause inserted by the insurance company was one exempting it from coverage for death caused by venereal diseases and that Act No. 97 of 1908, relating solely to forfeiture of policies, was without application to risks which were not covered by the contract. In arriving at this conclusion, the court said:

"It is our opinion that in this case it make no difference whether the party contracted the disease prior to or since the execution of the contract of insurance, because the risk was not covered by the contract."

But the clauses here invoked by the defendant do not relate to diseases or illnesses which are not covered by the contract. On the contrary, the diseases suffered by the assured, which caused her death, are specifically included as part of the risk. The restrictions limiting the defendant's liability, if interpreted as argued for by it, virtually forfeit three-fourths of the face value of the policy if the assured dies of a chronic disease contracted before the policy issued. Had the insurance company required a medical examination, this disease would have been detected. Its omission in this regard, by the terms of Act No. 97 of 1908, operated as a waiver of its right to claim forfeiture of the policy inclusive of all risks covered thereby. In short, the maintenance of the proposition contended for would permit the defendant to do something indirectly which it could not accomplish directly.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.