**LEPINE v. FIRST NAT. LIFE INS. CO.**
No. 16659.

Court of Appeal of Louisiana.   Orleans.
Nov. 14, 1938.

Normann & Bethea and Harold M. Rouchell, all of New Orleans, for appellant.

L. Julian Samuel, of Gretna, for appellee.

JANVIER, Judge.

Mrs. Irene Lepine Gaudet, widow of Louis Gaudet, designated beneficiary in a policy of life insurance issued by the First National Life Insurance Company on the life of her said husband, seeks recovery of the face value of the policy, $279. She alleges the death of her husband and that she has made due proof thereof. The sole defense is that the insured died of a chronic disease contracted before the policy had been in effect twelve months and that, therefore, only one-half of the face value of the policy is due because of a policy stipulation, the pertinent part of which reads as follows:

"9. Limitation of Benefits. * * * if the insured shall die from * * * any chronic diseases contracted before this Policy has been in force for twelve (12) months, only one-half the sum otherwise provided for in this Policy will be payable. * * *".

The insurer averred that it had previously tendered $139.50, the amount admittedly due. It deposited in the registry of the court this amount and prayed that it be relieved from the payment of all costs.

There was judgment for plaintiff for the full face value of the policy and defendant has appealed.

The defense relied upon is a special one and defendant is, therefore, required to prove the facts upon which it depends:

"Whatever may be the situation elsewhere, in this state it has been expressly held that an insurer relying upon a clause in the policy which exempts the insurer from or limits its liability for loss occurring in a certain manner, which would otherwise be embraced within the general terms of the policy, assumes the burden of proof to establish that the loss came within the exemption or limitation of the policy. Cahn & Wachenheim v. Fid. & Cas. Co., 157 La. 238, 102 So. 320; Gaines v. Acme Industrial Life Ins. Soc. (La.App.) 155 So. 276. See, also, Couch on Insurance, Vol. 8, sec. 2114, p. 6847; Corpus Juris, Vol. 53, verbo 'Insurance', p. 90."

Thus, if the defense is to prevail, it must appear that the cause of death was chronic disease contracted not more than twelve months after the date of the policy and not contracted prior to that date. We include this last requirement because of the conclusion reached in Geddes & Moss Undertaking & Embalming Co. v. First National Life Insurance Co., 189 La. 891, 181 So. 436, in which it was held, among other things, that such a stipulation is not effective if the disease was contracted prior to the issuance of the policy, since, because of the effect of Act No. 97 of 1908, an insurer which, without previous medical examination, issues a policy, is presumed to have known of the physical condition, health, habits, et cetera, of the insured and cannot later point to an illness existing when the policy was issued as cause for the annulment or partial forfeiture of the policy. See, also, our opinion in the same matter—177 So. 818.

Defendant, conceding that only a disease contracted after the date of the policy may form the basis of a partial forfeiture under that stipulation, maintains that the proof shows that the disease from which Gaudet died had not been contracted until after the issuance of the policy. It relies upon the fact that, according to the reports and records of the Charity Hospital of New Orleans, which, under Act No. 108 of 1936, must be accepted as making prima facie proof of the recitals which they contain, the said Gaudet was treated at that hospital from May 8th to May 17th, 1934, and that, although exhaustive tests and examinations were made, there was no discovery of any of the symptoms of the disease (encephalitis) from which defendant contends that he later died.

In the absence of proof to the contrary we think, then, that that fact is established and that, since the policy had been issued on May 7, 1934, prior to the time at which these tests were made, it satisfactorily appears that encephalitis had not been contracted when the policy was issued.

In order to show that the disease was contracted prior to the expiration of twelve months from the date of the policy, defendant again resorts to records of Charity Hospital of New Orleans in connection with Gaudet's treatment there from December 9, 1934, to January 3, 1935. This period, it will be noticed, is within the twelve months immediately following the issuance of the policy. There is nothing

to contradict any of the statements contained in these records and, therefore, under· authority of the statute to which we have above referred, they make prima facie proof of those statements. They show in great detail everything found by the medical experts at that institution and all the symptoms which at that time became evident, and Dr. Hyman—placed on the stand by defendant—after examining those records, testified that there could be no doubt that Gaudet was then suffering from encephalitis. No contrary medical evidence was produced and, therefore, we conclude that, within the twelve months following the issuance of the policy, Gaudet was suffering from that disease.

It is true that the hospital physicians diagnosed his ailment or disease as "maxillary sinusitis" and that such a disease has no necessary connection with encephalitis and is not one of the symptoms thereof. But it is quite evident, from what Dr. Hyman states, that though, at that time, maxillary sinusitis was the principal ailment which attracted the attention of the physicians, the other symptoms which they found showed conclusively that Gaudet was also suffering from encephalitis.

It is argued on behalf of plaintiff that, even conceding that he suffered from encephalitis and died from that disease, there is nothing which authorizes the belief that the said disease was chronic, and it is pointed out that, in order that a disease be effective in reducing the coverage of the policy, it must be a chronic one. But Dr. Hyman testifies—again without any evidence to the contrary—that any case of encephalitis, unless of traumatic origin, is chronic, and that the fact that the disease was in evidence in December, 1934, and that death did not result until October, 1935, is of itself evidence that it was chronic and not acute.

·Counsel for plaintiff, with ingenuity, calls to our attention the fact that in·the policy stipulation, which provides that on certain conditions only one-half shall be payable, the word "diseases" is used and not the singular, "disease", and he argues from this that the said stipulation is of no avail to the defendant unless the insured is shown to have died from at least two diseases contracted within the time mentioned.

The point made does not appeal to us. It is inconceivable that it was the intention of the parties that, in order for the stipulation to be applicable, there must be two chronic diseases contracted within a certain period and that the death must be caused by both of these diseases. We feel that the stipulation should not properly be interpreted as requiring more than one disease. In the policy which was involved in Lado v. First National Life Insurance Co., 182 La. 726, 162 So. 579, there was a stipulation similar to that with which we are concerned. The point now under discussion was not presented when the matter was before us and, therefore, was not discussed by us. See 158 So. 872. However, in the application for writs of certiorari and review, which were granted, the attention of the Supreme Court was called to the fact that the policy stipulation depended upon whether death had been caused by "venereal diseases" and it was argued that only one disease, "syphilis", was not sufficient to ·effect the forfeiture of the policy. Therefore, since, in its opinion, the Supreme Court made no reference to this point, we feel that it viewed the matter as we do here—possibly ingenious but unavailing.

But plaintiff's counsel points out that, at all events, the policy stipulation may not be availed of unless it be shown not only that the insured suffered from such chronic disease, but that the disease was the cause of death, and argues that in the record there is no admissible evidence showing the cause of death in this case. The only evidence which sets forth the cause of death is the physician's statement, which appears to have been prepared by the attending physician after the death of Gaudet, and this statement does state that the cause of death was encephalitis. But, when this certificate was offered in evidence, it was objected to as hearsay. The objection was overruled and the certificate was admitted. It is the contention of defendant that the certificate is admissible for either of two reasons: First, because it was produced by the plaintiff, and, second, because it was issued by a hospital and makes prima facie proof of its recitals.

Of course, if the certificate was not offered or produced by the plaintiff, unless it becomes admissible under what we may refer to as the Charity Hospital Statute, it should be considered as hearsay and is inadmissible, for, in the Lado Case, supra, 162 So. 580, the Supreme Court referred to the fact that there is well settled jurisprudence

that "hospital records are subject to the hearsay rule of evidence". When the plaintiff was testifying, she was asked on cross-examination if she had produced the said certificate of the attending physician and she stated very clearly that she knew nothing about it and later, when the certificate was offered on behalf of defendant company, it was stated that it had not been produced by plaintiff, but had been obtained by the defendant from the attending physician "on behalf of the beneficiary".

■ We do not think that such evidence is sufficient to warrant the statement that the certificate is admissible as having been produced by the claimant, or beneficiary, and it is only where such a certificate is offered by the plaintiff that it constitutes an admission against interest and, as such, is admissible. In Albert v. New Capital Industrial Life Insurance Co., La.App., 154 So. 755, Judge Higgins, then a member of this court, citing numerous authorities, said [page 756]: "* * * The authorities are to the effect that proofs of death submitted by a beneficiary are admissible in evidence as statements against the interest and unless explained or contradicted are sufficient to establish the facts sought to be proved by them. * * *"

In the Lado Case, supra, the Supreme Court, as we have said, held that the hearsay rule did not apply, but this was because the certificate had been produced by the beneficiary. It is quite true that the insurer would have had the right to demand of the claimant the production of a physician's certificate, for the policy itself provides that the beneficiary may be required to furnish proof of death and may be required to furnish statements of a physician or other person. But there is nothing here to show that such certificate was required of plaintiff, and the record leaves us with no alternative other than to hold that the said certificate has been produced by the defendant on its own behalf and that the plaintiff is not bound by it.

■ Nor is the certificate admissible as prima facie proof under the so-called Charity Hospital Statute. In the first place it does not appear to be a certificate of the hospital, but is a certificate issued on a form furnished by defendant-insurer and signed by a doctor who appears to be connected with the hospital, but who signs it not on behalf of the said hospital. In the second place, the said hospital does not appear to be one of the "Charity Hospitals" contemplated by the statute; to-wit, No. 108 of 1936. That statute, providing that such records shall make prima facie proof, refers to "either of the Charity Hospitals", and a search of the statutes of this state shows that there are recognized as "charity hospitals" in this state four institutions, one in Baton Rouge, which is referred to in Sec. No. 1013 of Dart's General Statutes, one in Monroe, referred to in Sec. No. 1024 of the said Statutes, one in Shreveport, referred to in Sec. No. 1029, and one in New Orleans, referred to in Sec. No. 1034. Whereas it does appear that The East Louisiana State Hospital, in which the said Gaudet died, is a state institution and receives annual appropriations for its support, it is nowhere referred to as a "charity hospital". For all of these reasons we feel that the certificate is not admissible.

■ There is no other proof that Gaudet died of encephalitis and, therefore, we find that defendant-insurer has failed to sustain the defense. But it has failed only because it has relied upon a certificate which was admitted in the court below and we feel, therefore, that a miscarriage of justice might result if we should render a definitive decree in favor of plaintiff. We have discussed all of the other points in the case so that it would not be necessary to reopen the entire matter in the court below and we have decided to remand the case merely to give the parties the opportunity of producing such other proof as may be available touching on the cause of death.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that the matter be and it is remanded to the Twenty-Fourth Judicial District Court for the Parish of Jefferson for further proceedings according to law and consistent with the views herein expressed.

Costs of this appeal to be paid by defendant; all other costs to await final judgment.

Reversed and remanded.