The plaintiff files this suit as beneficiary designated in a policy of industrial life insurance issued on October 25th, 1937, by defendant company on the life of Jerry Barras for the amount of $189. She makes all of the usual necessary allegations; that the policy was issued, the premiums paid, that Jerry Barras died on June 12th, 1938, and that due proof of death was furnished to the insurer, and she prays for judgment for the full face value of the policy with interest from June 12th, 1938.
The insurer admitted the issuance of the policy, the payment of all premiums and that the assured has died, but it denied all liability on the ground that the said assured in his signed application for the policy, in answer to certain questions had wilfully and fraudulently stated that at the time the said application was signed he "was in good and sound health and that he was not suffering from tuberculosis", whereas in truth he was not in sound health, having suffered for more than fifteen years with pulmonary tuberculosis, with which malignant disease he was, to his knowledge, suffering at that time. Defendant insurer also pleaded, in the alternative, that should it be held under the policy then, because of a limitation contained in the policy and claimed to be applicable under the circumstances shown here, the limit of liability should be fixed at the amount of premiums which had actually been paid.
There was a judgment dismissing plaintiff's suit and she has appealed.
When the policy was written the assured was not required to submit himself for a medical examination but a written and signed application was obtained from him, though it was not attached to nor made a part of the policy. However the policy was issued since the enactment of Acts Nos. 134 and 160 of 1934, and therefore it was not controlled by Act No. 52 of 1906, as amended by Act No. 227 of 1916, and consequently, even though the application was not attached to nor made part of the policy, it could be relied upon to show what statements were made by the assured at the time the application was signed.
Act No. 160 of 1934 provides that all industrial life insurance companies shall require the applicant "to make an application in writing therefor to the insurer and to sign the application with his genuine signature, or ordinary mark" and that such application "shall be a part of the contract of insurance issued thereon, whether or not the application or a copy thereof be attached to or indorsed upon the policy when issued."
This statute effected a significant change in the law concerning the proof of misrepresentation by an applicant for industrial insurance because prior to its enactment, Act No. 52 of 1906 prevented an insurer, desiring to rely upon the defense of misrepresentation, from pointing to statements contained in an application unless the application should have been attached to and made a part of the policy. Consequently, the decisions largely relied upon by plaintiff, which were based upon the law prior to 1934, have no application whatsoever. See Geddes Moss, etc., Co. v. First National Life Insurance Company, La.App., 177 So. 818, Whitmeyer v. Liberty Industrial Life Insurance Company,166 La. 328, *West Page 571 117 So. 268, Eagan v. Metropolitan Life Insurance Company, 181 La. 16,158 So. 575.
But even Act No. 160 of 1934, though authorizing us to examine the statements made in the application, does not authorize the annulment of the policy unless there are found statements which are not only false, but which have been willfully made by the assured, for in Section 3 of the said statute we find the following: "No policy of industrial life insurance shall be void, nor shall the rights of the assured thereunder be impaired, by any misrepresentation in the application of the assured unless such misrepresentation is wilful on the part of the assured and conceals facts as to the ill-health of the assured existing at the time of any such application, * * *".
If then we are to hold that there may be no recovery under this policy, we must find not only that the statements pointed to concerning the health of Barras at the time the application was made were false but also that their falsity was known to him, and that therefore he acted willfully in making those statements. The statements pointed to were not answered by him in his own hand, but are shown to have been dictated to the agent who filled out the application and then presented it to Barras that he might make his mark thereon.
Question 14 reads as follows: "Do you suffer with tuberculosis, heart or a malignant disease?" This question was answered with a check mark, which the agent testifies means that Barras answered "No." In answer to question 15, reading: "Are you now in good and sound health?" Barras answered, "Yes".
There seems to be no doubt that for some fiften years prior to the date on which the policy was applied for, Barras had intermittently suffered with pulmonary tuberculosis, and the agent states that he knew of this, and of course there can be no doubt that Barras, himself, knew of it. But the agent testifies, in effect, that he was of the opinion that at the time Barras made the application he had recovered and was in good health. He was asked: "Was there ever any willful concealment of the state of Jerry Barras' health" and he answered: "No sir."
Barras knew the agent well and, of course, knew that the said agent must have been familiar with the fact that he had, at times in the past, suffered with pulmonary tuberculosis.
We think from all of these facts that the defendant has failed to show that any misstatement, which may have been made in answer to questions contained in the application, were willful misstatements within the contemplation of the applicable statute. If the agent thought that Barras had recovered, it may well be that Barras himself thought so also.
In oral argument there was a suggestion that there may have been fraud in connection with the issuance of the policy and that therefore under Section 3 of Act No. 160 of 1934, there could be no recovery because in that section the statute provides "that fraud shall always be a defense * * *." But in view of the knowledge which the agent had of the prior illnesses of the assured, there was no fraudulent concealment on the part of the assured. The true facts must have been known to the agent, and therefore there could be no fraud within the contemplation of the statute. It has several times been held that there can be no fraud where the representative of the company knows the true facts and fails to disclose them to his principal. See Succession of Dekan v. Life Insurance Company of Virginia, La.App., 172 So. 37, Sharper v. Security Mutual Benevolent Ass'n, La.App., 177 So. 461; and Bordelon v. National Life Accident Insurance Company, Inc., La.App., 187 So. 112.
We come then to a consideration of what is the extent of defendant's liability under the policy. Defendant insists that it should be limited to the amount of premiums actually paid. The death benefit fixed in the policy is $189, but there is a stipulation reading as follows: "If the death of the insured occurs within one year from the date hereof as a result of pulmonary disease, cancer or disease of the heart, liver or kidneys, the liability of the company under this policy shall be limited to the amount of premiums actually paid hereon."
It is shown that the death occurred within one year of the date of the policy, and that the cause of the death was pulmonary tuberculosis, which is a pulmonary disease, and is therefore one of the diseases named in the above quoted stipulation. Plaintiff believes and argues that the said stipulation is unenforceable, being violative of Act No. 97 of 1908, which statute in effect provides that if a life insurance company issues a policy without requiring that the assured shall submit himself to a medical examination, *West Page 572 
it, the insurer, shall be presumed to have had knowledge of the condition of the assured's health at the time of the issuance and that it, the insurer, shall be considered as having waived the right to claim a forfeiture based on any misstatement made by the assured concerning his health.
Counsel for defendant insurer contend that the clause on which they rely in limiting defendant's liability does not constitute a forfeiture of the policy but merely limits the coverage under certain circumstances, and that those circumstances do not depend on the state of health of the assured at the time of the issuance of the policy.
On behalf of plaintiff our attention is directed to Geddes 
Moss, etc., Co. v. First National Life Insurance Co., La.App., 177 So. 818, 822, as authority for the proposition that where there is a policy stipulation limiting liability in case death occurs from a disease contracted before the policy has been in effect for any stipulated time, such a stipulation is violative of the said Act No. 97 of 1908. But we do not so read that decision. It is true that there the policy provision somewhat resembled the one relied on by defendant here. It read as follows: "`One-half of the death benefit provided for in above schedule is payable by the Company should death occur from any accident occurring or illness contracted before this Policy has been in force for six months.'"
But the vast distinction between the two is that in the one before us the date and the cause of the death are the important things, whereas in the stipulation above quoted from the policy in the Geddes Moss case, the date on which the illness was contracted was the determining factor, and it was there contended by the insurer that even if the date on which the disease was contracted was prior to the date of the policy, nevertheless the stipulation was enforceable and had the effect of forfeiting or annulling the policy. In other words, in the Geddes Moss case the deceased was shown to have died from a disease contracted before the policy was issued. The stipulation provided that the policy should not be effective if the death should occur from "an illness contracted before this policy has been in force for six months."
The insurer contended that that stipulation meant that even if the disease from which the death resulted had been contracted prior to the date of the policy, the stipulation should be effective and should prevent recovery. The plaintiff maintained that if that interpretation should be given then there would be a violation of the provisions of Act No. 97 of 1908, since the insurer would then be pointing to a disease with which the assured was suffering at the time of the issuance of the policy. We held that if that stipulation should be given that interpretation, then the interpretation would be violative of the provisions of that statute of 1908. We said: "* * * Moreover, were we to interpret these limitations in the manner contended for by the defendant, the clauses would be invalid because their enforcement would accomplish a partial forfeiture of the policy in violation of Act No. 97 of 1908. It should be borne in mind that Act No. 97 of 1908 proclaims, in substance, that any insurance company issuing policies without first requiring a medical examination of the assured is presumed to have knowledge of the assured's health, habits, and occupation and that such company waives the right to claim a forfeiture of the policy on the ground that the statements made by the assured in the application for insurance were false. Here, the defendant has written a policy which, if construed in the manner maintained for [contended for], would work a partial forfeiture of the coverage granted and would sanction its avoidance of the provisions of Act No. 97 of 1908."
It is shown that the weekly premium was 15¢ and that the policy was in force from the date of issue, October 25th, 1937, to the date of death of the assured, June 12th, 1938. Thirty-four weekly premiums were paid.
Plaintiff is thus entitled to $5.10 with legal interest from judicial demand.
The judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of Cecile Lapeyrouse, wife of Martin Barras, and against the Orleans Industrial Life, Health, Accident Burial Benefit Insurance Company in the sum of $5.10 with legal interest from February 6th, 1939, and for all costs.
Judgment reversed. *West Page 573